THE CITY OF KANSAS v. HILL *et al., Appellants.*

1. **Condemnation of Property for Street Purposes**: CHARTER: JURY.  A jury of six men, freeholders of the City of Kansas, as provided for in the charter of said city, is a competent jury to try an appeal from the mayor to the circuit court, in a proceeding under the charter to condemn private property for the purposes of street extension.

2. **Condemnation Proceedings**: EVIDENCE.  On the trial of said appeal, the defendant offered evidence to show that the fact that the real estate sought to be condemned was located, and had been located for many years, in the line of the street proposed to be extended, and between the east and west parts of said street already opened, diminished its value, which evidence the court excluded; *Held*, error.

3. ——: ——: INSTRUCTIONS.  The city charter provided, in reference to proceedings to condemn property for street purposes, that "parties interested may submit proof to the jury, and the latter shall examine, personally, the property to be taken and assessed;" *Held*, that an instruction was erroneous which told the jury that in assessing the value of the property, they might wholly disregard the evidence offered, and make their finding from their own observation alone.

4. **Appeal**: AGREED CASE.  The appeals in this proceeding *Held*, to be properly in the Supreme Court, under rule 20 thereof, relating to agreed cases.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

*Tichenor & Warner* and *O. H. Dean* for appellants.

The appellants were entitled to a jury of twelve men. Cons., art. 2, § 21; *Vaughn v. Scade*, 30 Mo. 600; *Henning v. Railroad Co.*, 35 Mo. 408; *State v. Van Matre*, 49 Mo. 268; *Kine v. Defenbough*, 64 Ill. 292; *Isom v. Railroad Co.*,

36 Miss. 312; *Armstrong v. Jackson*, 1 Blackf. 374. Appellants were entitled to a jury composed of six disinterested freeholders of the city; the jury that tried the cause was liable to pay a part of whatever might be assessed against the city, and hence was not impartial. *Woodford v. Railroad Co.*, 2 Swan 436; *M. A. L. R'y Co. v. Barnes*, 40 Mich. 285; *Dively v. City*, 21 Iowa 565; *Eberly v. Board, etc.*, 11 Mo. 247; *Fine v. St. Louis*, 30 Mo. 166; *Fulwiler v. City*, 61 Mo. 479; *Rose v. City*, 49 Mo. 509. The instruction number five, that the jury were not bound to find according to the evidence, and might make their finding from their observation alone, was erroneous. Redf. on R. R., p. 288; *C. P. R. R. Co. v. Pearson*, 35 Cal. 261; *Chandler v. Jamaica*, 122 Mass. 305; *N. O. R. R. Co. v. Zeringue*, 23 La. An. 522; *Co. Ct. v. Griswold*, 58 Mo. 199; *Hannibal v. Schaubacher*, 57 Mo. 588; *W. K. C., etc., v. Waldro*, 70 Mo. 630; *Hosher v. Railroad Co.*, 60 Mo. 303; *K. C., etc., v. Campbell*, 62 Mo. 585. The court erred in refusing to admit the evidence to show that the property sought to be taken was diminished by the fact of its situation on Eighth street between east and west parts thereof already opened. Redf. on Railways, (5 Ed.) p. 290, note 22; *City v. Bolton*, 9 Heisk. 508; *S. & E. R. R. Co. v. Doughty*, 2 Zab. 595; *Soulard v. City*, 36 Mo. 544; *Hosher v. K. C., etc., R. R. Co.*, 60 Mo. 303. Unlimited speculation is not allowed in arriving at the damages caused by condemnation proceedings. *C. & P. R. R. Co. v. Francis*, 70 Ill. 238; *Hoenstein v. Railroad Co.*, 51 Pa. 87; *Rogers v. Railroad Co.*, 35 Me 319. The record of the case was properly made up under rule 20 of this court.

*J. Brumback* for self and for the city.

Appellants were not entitled to a common law jury of twelve men. *L. & F. P. Co. v. Pickett*, 25 Mo. 535; Mills on Eminent Domain, §§ 91, 253, 254; *People v. Justices, etc.*, 74 N. Y. 406; *People v. Clark*, 23 Hun 374; *Cruger v. Railroad Co.*, 12 N. Y. 190; *Pusey's Appeal*, 83 Pa. St. 67;

*Mitchell v. Railroad Co.,* 68 Ill. 288; *State v. St. Louis,* 52 Mo. 576; *Mayor v. Long,* 31 Mo. 369; *Comm. v. Ryan,* 5 Mass. 89; *Comm. v. Worcester,* 3 Pick. 461; *Comm. v. Reel,* 1 Gray 472; *Uhrig v. St. Louis,* 44 Mo. 458. Instruction number five was proper. *C. B. & Q. R. R. Co. v. Railroad Co.,* 58 Ill. 273. The case is properly here under rule 20 of the Supreme Court.

*Boggess, Cravens & Moore* for Reid.

The objection by appellants to the number and qualifications of the jurors, was untenable. Kansas City Charter, § 6, (Acts of Legislature 1875, pp. 244, 249); Cons., art. 2, § 21; *L. & F. R. R. Co. v. Pickett,* 25 Mo. 535. There was no error in the exclusion of the evidence complained of. Its object was to diminish the value of land sought to be condemned, by reason of the fact that it was situated between the east and west ends of said Eighth street, where it might be taken when that street should be extended. There was no legal necessity to extend said street, hence it might never be done, and to admit such evidence was to prejudice the jury against the rights and interests of the land owners. Instruction number five, complained of by appellants, was properly given. 19 Wend. 695; *Piper's Appeal,* 32 Cal. 530; *Pryor's Appeal,* 19 Wend. 651, 659; *Tidewater Canal Co. v. Archer,* 9 Gill & J. 479; *Caster v. Trust Co.,* 4 Zab. 730; *Remy v. Municipality,* 12 La. An. 500; *Columbia, etc., v. Geisse,* 36 N. J. 537. The court will not undertake to review the verdict of the jury, unless it is clear they proceeded on a wrong theory in arriving at their conclusion. *St. Louis, etc., R. R. Co. v. Richardson,* 45 Mo. 466; *Miss. Co. v. Ring,* 58 Mo. 491; *Lee v. Railroad Co.,* 53 Mo. 178; *Quincy v. Ridge,* 57 Mo. 599.

RAY, J.—This is a proceeding begun by the City of Kansas, before the mayor of said city, under and in pursuance to its charter, (sections 1 to 6, inclusive, Acts of

1875, pp. 244, 249,) to condemn and appropriate certain real estate therein mentioned, to the use of the city for street purposes, and to extend Eighth street in said city from the west line of Delaware street to the east line of Wyandotte street, a distance of several hundred feet, and thereby connect the east and west ends of said street already opened, and thus render the same continuous, and to make just compensation therefor. The city ordinance passed for that purpose is as follows:

No. 19,350.

An ordinance to amend an ordinance to open and extend Eighth street from Delaware street to Wyandotte street.

Be it ordained by the Common Council of the City of Kansas:

Section 1.   That an ordinance No. 19,143, entitled "An ordinance to open an extend Eighth street from Delaware street to Wyandotte street," approved April 1st, 1880; be and the same is hereby amended so as to read as follows, to-wit:   Beginning at the intersection of the south line or T. H. Swope's second addition to Kansas City with the west line of Delaware street, thence west along the south line of said T. H. Swope's second addition to the east line of Wyandotte street, thence south sixty (60) feet; thence east and parallel with the south line of said Swope's second addition to the west line of Delaware street; thence northwardly sixty and six-tenths (60 6-10) feet to beginning, and all private property within said boundaries is hereby condemned for public use as a street, and just compensation therefor shall be assessed, collected and paid according to law.

Section 2.   The common council hereby determines and prescribes the limits within which private property shall be deemed benefited by reason of the proposed improvement mentioned in the preceeding section, and be assessed and charged to pay just compensation therefor as follows, to-wit:   Beginning at a point on the west

line . of Walnut street one hundred and twenty-three (123) feet north of the north line of Eighth street; thence west to a point on the east line of Broadway street one hundred and nineteen (119) feet north of the north line of Eighth street; thence south three hundred and twenty-nine (329) feet; thence east to a point on the west line of Walnut street one hundred and forty-six (146) feet south of the south line of Eighth street; thence north three hundred and twenty-nine (329) feet to the beginning.

Section 3. That the sum of $100 be, and the same is hereby appropriated out of the general fund to pay the costs and expenses of the proceedings necessary to condemn the private property so to be taken, and a part of such sum as may be assessed against the city of Kansas as benefits to the city and public generally by reason of opening and extending said street.

Approved May 4th, 1880.

C. A. CHACE, Mayor.

Attest, V. D. CALLAHAN, City Clerk. (Seal).

A map accompanying the proceedings, sets forth and exhibits the land to be taken, and the limits within which, " benefits " are to be assessed, to raise the money to pay for the same.

It seems there were eight or nine separate parcels of land sought to be taken and condemned, owned by about as many several parties; and about ninety or more separate and distinct parcels of land subject to be assessed with " benefits," to raise the money to pay for the land so taken, and some hundreds of persons interested in the lands subject to be assessed with benefits, all of whom, are made parties defendants in the proceeding.

Such proceedings under the charter were had as resulted in a verdict from which an appeal was taken to the circuit court, where on a trial anew, before a jury of six men, there was a verdict and judgment from which the two Hulings on the one part, and said Swope on the other,

have made separate appeals and thus brought the case here for review.

To this end separate " agreed statements," under rule 20 of this court, were made between these appellants, the Hulings and said Swope on the one side, and the City of Kansas the plaintiff on the other, showing the cause of action, the defence and the evidence together with the rulings of the court thereon, and the exceptions saved to said rulings; which statements under said rule are here to be treated as the records in said respective appeals, and the causes therein considered and adjudged accordingly. By agreement in this court these two appeals or causes were argued and submitted together, and for convenience will in like manner be considered and determined together in one opinion.

The " agreed statement" in the Swope appeal, as far as material is as follows :   The first exceptions saved were as follows :

" The cause coming on to be heard, it appeared that the judge of the court has chosen the following named persons as jurors in this case (here follow six names.) At this point defendant, Thos. H. Swope, objected to the jury because it consisted of but six men, and at the same time requested a jury of twelve men, but the court overruled his objection and denied his request, to which action of the court said defendant at the time excepted. Upon examination under oath, said jurors testified that they owned real estate and were freeholders in the City of Kansas, but had no interest in any real estate covered by this proceeding, at which point defendant, T. H. Swope, objected to the jury on the ground that they were not disinterested, but were directly interested, inasmuch as it would be to their interest to assess as little benefits as possible against the city, they and their property having to pay a portion of the same, which objection the court overruled, to which action of the court in so overruling said objection defendant, T. H. Swope, at the time excepted."

On the question of the benefit to the city, by the proposed improvements, all witnesses swore it would be of some benefit. One swore it would not be large. The city engineer testified that one-tenth of the benefits should be assessed against the city. Six witnesses fixed it at from five per cent to thirty per cent. Witnesses were introduced to prove the value of the ground proposed to be taken.

On cross-examination defendant, Swope, asked the following question: "Does not the fact that the real estate proposed to be taken lies, and has lain for a great many years in the line of Eighth street and between the east and west parts of said street already opened diminish the value thereof?"

The owners of said real estate objected to the question, to which action of the court defendant at the time excepted. Reference is here made to the map with the transcript in this court. It shows the ground taken to be a strip of ground between two portions of Eighth street, the object of the condemnation being to make a continuous street. Defendant, Swope, introduced six witnesses, experts in the value of real estate in Kansas City, who testified that the lot on the corner of Delaware street and the proposed improvements, would be benefited from twenty to twenty-five per cent, of the value of the same, from the fact of being made a corner lot, and no more, taking into consideration that the street would have to be graded, curbed and guttered and sidewalked, for which the corner would be taxed; and upon this point, this was all of the evidence, and the evidence of the value of this lot was, that it was the same as that of the north twenty feet upon Delaware, taken by the proposed improvement. By a corner lot, said witness testified, they meant one having a front of from twenty to twenty-four feet.

This lot so cornering on Delaware and the proposed improvement, was designated on plat (map above referred to) as lot 13, in block 3, T. H. Swope's second addition, said lot having a frontage on Delaware of 44 3-10 feet; and

said witnesses further testified that the rest of said lot would be benefited about five per cent of the value thereof. By their verdict the jury found the north twenty feet of the land taken on Delaware street to be worth $276.66-100 per front foot, hence the lot on the corner, taking it at a front of twenty-four feet, would be worth $6,639.85, and at the same rate the whole of lot 13 would be worth $12,394.35 ; assessing the benefits at the highest per cent fixed by any witness, to-wit, thirty per cent on twenty-four feet, and five per cent on the rest, and they would amount to $2,279.70, yet the jury assessed the benefits against this lot at $3,500. They assessed the rest of this ground as follows : Lot 11, $1,500 ; lot 12, $1,500 ; lot 14, $700 ; lot 15, $300 ; a strip at the end of the lots, $500, making an assessment of $8,000 for benefits against the land of defendant Swope. The owners of the strip of ground condemned, were allowed $28,400, and the benefits assessed against the city were $1.

The " agreed statement" in the Huling appeal, is to the effect following:

"On the question of benefit to the city by the proposed improvements, all of the witnesses swore it would be of some benefit. One swore it would not be large. The city engineer testified that one-tenth of the benefits should be assessed against the city. Six witnesses fixed it at from five per cent to thirty per cent. Witnesses were introduced to prove the value of the ground to be taken. Reference is here made to the map with the transcript in this court. The said map shows the ground to be taken to be a strip of land between two parts of Eighth street, the object of the proceedings being to connect the two parts of said street and make said street continuous. Said defendant, Geo. D. Huling, introduced six witnesses, who were experts in the value of real estate in Kansas City, and they testified that the lots on the corner of Delaware street and the proposed improvement, would be benefited from twenty to twenty-five per cent of the value of the same, and no more, taking into consideration that said street would have to be graded,

curbed and guttered and sidewalked, for which the corner would be taxed, and upon this point this was all the evidence. By a corner lot, said witness testified they meant one having a front on Delaware street of from twenty to twenty-four feet. The lot cornering on Delaware street and the proposed improvements, belonged to defendants Geo. D. Huling and Lucy S. Huling, was designated on the plat as part of lot 194, Ross & Scarritt's addition to the City of Kansas; said lot is a very narrow strip of ground which extends along the west side of said Delaware street, lying in a triangular shape. It extends along and fronts upon said Delaware street for the distance of 131 feet. Forty front feet of this strip the plaintiff proposed, in the proceedings, to take for the opening of said Eighth street. The deepest part of said strip is at the south end thereof, where it extends back from the west line of said Dalaware street twenty feet and ten inches, and from that line it gradually grows more shallow until it runs to a point. Where said strip would corner upon Delaware street and Eighth street, after the latter has been opened, as proposed in this proceeding, the depth would be something less than eight feet; accordingly, of the strip remaining, there would be left, after the north forty feet had been taken by the opening of Eighth street, a piece of ground that would front on Delaware street ninety-one feet, the greatest depth of which would be twenty feet, and the least eight feet. This piece of ground appears on the plat hereto attached, as that upon which are written the names of Geo. D. Huling, this appellant, and Lucy S. Huling, said plat being a copy of the plat furnished by the plaintiff to be used in these proceedings and prepared by the city engineer, as provided by law, which shows the location of the property of the appellant, Huling, with reference to the proposed street. The agreed statement contains a copy of the original plat, with the names of the owners of property to be assessed with benefits, and within the benefit district, as required by the city charter. Said strip was valued by the witnesses

at $50 per front foot on Delaware street, and this valuation was put upon the forty feet of said strip which would be needed for said improvement, and which the plaintiff proposed to condemn in these proceedings; one witness testified that the forty foot strip was worth $75 per front foot. Said witness further testified that the balance of said lot or strip belonging to said George D. Huling, would be benefited about five per cent of the value thereof. The witness testified that the value of this strip of ground arose wholly from the fact that it excluded the property in the rear thereof from access to a business street, and that it was only worth what the owners of the property in the rear thereof could afford to pay for it, in order to obtain for their property a front on Delaware street. That of itself it had no value, because it was not deep enough to be used for any business purpose profitably upon Delaware street; that the business transacted upon said street is done by firms engaged in the wholesale business almost exclusively. All the witnesses testified that property of full depth upon Delaware street, upon the west side thereof, and within the district prescribed by the common council as that deemed by it to be benefited by the proposed improvement, to be worth from $300 to $400 per front foot, and that upon the other side of the street, although not so deep, to be worth considerably more, because it extended through to another street used for retail business. The corner lots of twenty-four front feet were valued twenty-five per cent higher than inside property."

Accompanying the Huling abstract is a diagram explanatory thereof, which see next page.

At the close of the testimony, the court gave a number of instructions, some at the instance of the plaintiff, and others at the instance of various parties defendant, but it is deemed necessary here to insert but one of the number, so given, over the objections of these appellants, and to the giving of which, these appellants duly excepted. That instruction is number five, and is as follows :

5. The jury are further instructed that they are the exclusive judges of the value of the property taken, and of the benefits to property within said district, they are not bound to find in this case according to the evidence, such evidence is only intended for the purpose of furnishing the jury information, and they may wholly disregard the same and make their finding from their own observation alone, and they are authorized to take into consideration the location, situation and also the surrounding circumstances connected with any or all the property involved, both that taken and subject to the assessment with benefits.

The causes here relied on by these appellants for a reversal, are: 1st, The number and competency of the jurors; 2nd, The refusal of the court to allow defendant Swope, on cross-examination, to ask the following question: "Does not the fact, that the real estate proposed to be taken lies, and has lain for a great many years, in the line of Eighth street, and between the east and west parts of said street, already opened, diminish the value thereof." 3rd, That the assessment of "benefits" against the city was too small; 4th, That the several assessments of "benefits" against these appellants, were excessive and unauthorized by the evidence in the cause; 5th, That instruction number five was error.

On the other hand, it is objected by the city, the plaintiff, and on behalf of Reed, Brumback and others, who were parties defendants to the proceedings, but who acquiesced in the several assessments against them, and are not parties to these appeals of the Hulings and Swope, that this court cannot reverse in any event, because the case is not here according to rule 20 of this court; that the agreed statements were made by the city, on the one side, and by Swope and the Hulings on the other; and that no statement according to rule 20 could be made, unless all the parties to the proceedings agreed thereto.

As to the first point, the number and competency of the jurors, the city charter provides that: "On appeal,

under this section, the jury shall consist of six men, free-holders of the city, and be chosen by the judge." Under this express provision of the charter, as well as the weight of authorities cited in briefs of counsel, we think the objection is not well taken.

On the second point, we are unable to see any valid reason why the question might not be asked and answered. Like any other fact, it is a circumstance in the case, tending to show the value of the property in question, and might well be taken into consideration by the jury in estimating the value. How much weight it might or ought to have, is for the jury to determine. Its position between the two ends of the street sought to be connected, and its liability thus to be taken, might well enter into its market value, since purchasers, desiring to improve for business or residence purposes, might well hesitate to invest in property thus liable to be taken. Its exclusion by the court, we think, was error.

The third and fourth objections may be taken and considered together. The charter provides, (§ 3, p. 245): " That the jury shall first ascertain the actual damages done to each person or corporation, in consequence of the taking of their property for such purposes, without reference to the proposed improvement, as the just compensation to be made therefor; and second, to pay such compensation, assess against the city the amount of benefits to the city and public generally, inclusive of benefit to any property of the city, and against the several lots and parcels of private property deemed benefited, as determined according to the last section ; each lot or parcel of ground to be assessed with an amount, bearing the same ratio to such balance as the benefit to each lot or parcel bears to the whole benefit to all the private property assessed."

Under this provision the actual value of the property sought to be taken was assessed, in the aggregate, at the sum of $28,400. To pay for the same, the city was assessed with " benefit" to the amount of $1. The property of the

appellant, Swope, was assessed with " benefit," in the aggregate sum of $8,000; while that portion of the Huling propty, not taken, was assessed with " benefit" to the amount of $3,025.48, and the part sought to be taken was valued at $2,000. How this result was reached under the evidence in the cause, it is difficult to tell, unless that evidence, as suggested by instruction number five, *supra*, was wholly disregarded.

On the question of benefit to the city, the agreed statement shows that " all witnesses swore it would be of some benefit. One swore it would not be large. The city engineer testified that one-tenth of the benefits should be assessed against the city. Six witnesses fixed it at from five per cent to thirty per cent." As to the benefit assessed against the remnant of the Huling property not taken, if the evidence in the agreed statement is to have any weight, it would seem largely in excess of the actual benefit conferred. To a great extent, also, the same may be said of the benefits placed on the Swope property. But whether these assessments of benefits, in point of fact, be too low or too high, as claimed by appellants, from the view we have taken of these cases, need not now be determined, and we express no opinion on either of these points. A trial, under proper instructions, might have secured a different result.

The material and controlling question, however, before us, grows out of the giving of the fifth instruction, *supra*. The charter expressly provides that : " Parties interested may submit proof to the jury, and the latter shall examine personally the property to be taken and assessed." Why may the parties submit proof, if the jury are at liberty to disregard the same, and make their findings from their own observations alone ? It would seem a farce to introduce evidence, if it may be wholly disregarded. Why go to all the trouble and expense, if the jury may make their verdict from their own observation alone. We do not say or intimate what weight or importance the jury may, or ought to

give the proof, so submitted; but when submitted, we think it is their duty to consider, and not wholly disregard it. If "such evidence, (in the language of the instruction,) is only intended for the purpose of furnishing the jury information," what is the use of furnishing such information, if it may be utterly disregarded. It may be conceded that if the parties interested decline to submit any proof to the jury, that it would be perfectly competent for them to make up their findings and assessments from their own personal examination of the property. The charter expressly makes it their duty to examine personally the property to be taken and assessed. This duty they must perform, whether the parties in interest submit their proof or decline to offer any. The object of the statute, in this particular, it would seem, was to afford the jury this additional means of information, rather than authorize them to ignore and disregard the common law source of information derived from the testimony of competent and intelligent witnesses. This instruction, therefore, both under the charter and authorities cited by counsel, was error.

The only remaining question is the objection here urged by the city, and also on behalf of Reed, Brumback and others, that the appeals are not here according to rule 20 of this court. That rule provides that: "Parties may, in the courts of first instance, agree upon any statement of the cause of action, the defence and the evidence, together with the rulings of the court thereupon, and the exceptions saved to any ruling, which may intelligibly present to the Supreme Court, or any appellate court, the matters intended to be reviewed; and this statement, with a certificate of the judge before whom the cause was tried, that the same is a substantial history of what occurred at the trial of the cause, shall be treated as the record in all appellate courts, and the judgment rendered in the court of first instance shall be affirmed or reversed, according to the opinion entertained by the Supreme Court respecting the same."

This was a proceeding, as we have seen, begun by the City of Kansas, under and in pursuance of its charter, to establish, open and extend Eighth street from Delaware to Wyandotte; to condemn and appropriate private property for that use, and to provide the means of paying therefor, by the assessment of "benefits" against all private property, within certain limits, deemed benefited thereby. The City of Kansas was the actor, the party plaintiff, in these proceedings, and all parties owning the property thus sought to be taken and assessed with benefits, were, by it, made parties defendant in said proceedings. The proceedings, however, were special in their object and character, each lot or tract of land being separately assessed and charged with the amount of benefit supposed to be conferred thereby, and to enforce the same separate special judgments and executions were rendered and ordered accordingly. The charter then provides that: "In case the city, or any defendant to such proceedings, shall feel aggrieved by the verdict of the jury, *such* party so aggrieved, may,     * * appeal to the circuit court in and for the county of Jackson, in this State." The charter further provides, in substance, that upon such appeals, the circuit court shall become possessed of the cause and try the same *de novo*, by a jury of six men, (unless a jury is waived,) chosen by the judge; the charter also provides that: "No assessment shall be affected, or interfered with, for the reason that any other assessment, or assessments, made in the same proceedings may be invalid, in whole or in part." There is a further provision that: "Tax-bills filed and recorded as aforesaid, shall be subject to the order of the court, and may be set aside, or the amount of the assessment reduced, on motion of any party interested in the property assessed, the city having reasonable notice of the filing of such motion and the object thereof." There is still another provision, which declares that: "If the city fail to collect any assessment, in whole or in part, it may pay the amount, so not collected out of the city treasury." From all which we

think it quite manifest that under rule 20, and these charter provisions, as well as the authorities cited, that the City of Kansas, on the one side, and the parties appellant on the other, are to be deemed and held as the parties authorized and empowered, in a case like this, to enter into and make the agreed statement contemplated in said rule 20. The city institutes the proceedings in its own name, and although all parties owning property within the prescribed district are made parties defendant, yet the object and purpose of the proceeding is to impose and enforce a separate and distinct charge against each separate and distinct tract of land, and the owner of every such tract or lot, for the purpose of this proceeding, is treated and held as a separate and distinct party defendant, and as such, must be held to be a "party" within the meaning of rule 20, *supra*. His interest is adverse to that of the city, and separate and distinct from every other party defendant, and upon appeal, no reason, in principle or policy, is seen why he and the city may not make the stipulation and statement contemplated in rule 20. This being so, it is, perhaps, unnecessary to inquire or decide whether the city, after having made the agreed statement in question, ought now to be heard to call in question its validity; and, in like manner, whether Reed or Brumback, who acquiesced in the several assessments against them, and are not parties to these appeals, have any standing in court, or right to be heard, in opposition to these appellants. This question, however, need not be passed upon.

For the reasons hereinbefore stated, each of the several judgments of the circuit court, herein appealed from, is reversed and the said several causes remanded for further proceedings, in conformity to this opinion. All concur.