In Re Condemnation of Independence Avenue Boulevard; Kansas City v. Smart et al., *Appellants.*

In Banc, April 30, 1895.

1. **Municipal Corporation:** KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: STATUTES: REPEAL. The power of the mayor and council of Kansas City to establish a boulevard under its charter (arts. 3 and 7) was not abrogated by the amendment of section 3, article 10, of such charter, requiring the board of park and boulevard commissioners to select streets for the establishment of boulevards and to recommend its action thereon to the council.

2. **Statutes:** REPEAL BY IMPLICATION. A later statute will not repeal a former one by implication, unless they are irreconcilably repugnant or it appears that the legislature intended the later act to take the place of the former one. (*Manker v. Faulhaber,* 94 Mo. 430.)

Kansas City v. Smart.

3. **Municipal Corporation**: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: PROCEDURE.  An effort by Kansas City to acquire by amicable agreement, private property for the establishment of boulevards not being required by its charter, such attempted agreement is not essential to the maintenance of condemnation proceedings for such boulevard purposes.

4. ——: ——: ——: ——.  The filing by the engineer of said city, with the mayor, of a map descriptive of the land sought to be condemned, and of its owners, is not a jurisdictional step under the charter of Kansas City in a proceeding to condemn land for boulevard purposes, and the failure of the mayor's record to recite the filing of such map does not affect the validity of such proceeding.

5. ——: ——: ——: FILING PAPER.  The placing by an officer of a filing mark on a paper required to be filed in his office is not essential in order to make it a matter of record.

6. ——: ——: ——: OBJECTION TO JUROR.  A general objection to the whole panel in proceedings to condemn land is insufficient, on appeal, as an objection to a particular juror on the ground that he was a member of the council when the ordinance providing for the proposed improvement was passed.

7. ——: ——: ——: JURY TRIAL.  The fact that, in a condemnation proceeding by a city for boulevard purposes, certain of the defendants are incorporated companies does not give the other defendants the right to demand a trial by a jury of twelve under article 12, section 4, of the constitution.  (*City of Kansas v. Vineyard, ante*, p. 75, *followed and approved.*)

8. ——: ——: ——: ——.  A municipal corporation is not an incorporated company within the meaning of said constitutional provision guaranteeing a jury trial.  (*Ibid.*)

9. ——: ——: ——: VERDICT.  The mere fact that the verdict in such proceedings assessed the benefits to the city at one dollar will not justify setting it aside as unjust and discriminating, such verdict being founded on the conflicting evidence of numerous witnesses and on views of the premises by them extending over a period of several weeks.

10. ——: ——: ——.  An appellant in such proceeding can not avail himself of any error or defects affecting the rights of other parties not appealing.

11. ——: ——: ——: VERDICT.  A mistake in the description affecting a certain lot in the verdict is immaterial where it is obviated by a correct description in the ordinance providing for the condemnation proceedings.

VOL. 128—18

12. ———: ———: JUDICIAL KNOWLEDGE. The charter of Kansas City is a public act, of which the courts will take judicial notice.

13. ———: ———. Condemnation proceedings under an ordinance of Kansas City for the establishment of a boulevard, *held* valid as against the objection that the record does not disclose the state or county in which the property sought to be condemned is situated.

*Appeal from Jackson Circuit Court.*—HON. M. A. FYKE, *Esq.*, Special Judge.

AFFIRMED.

*James G. Smart* and *Lathrop, Morrow, Fox & Moore* for appellants Alice M. and D. O. Smart.

(1) The court erred in denying defendant's motion to dismiss under the amendment of 1892, to section 3 of article 10 of the Kansas City charter. The common council was without authority to proceed to establishment of a boulevard until the board of park and boulevard commissioners had selected routes and streets, etc. *St. Louis v. Frank*, 78 Mo. 41; *St. Louis v. Gleason*, 93 Mo. 33; *Fore v. Hoke*, 48 Mo. App. 254; *Kansas City v. Ford*, 99 Mo. 91; *Small v. Pennell*, 31 Me. 267. (2) The court committed error in sustaining the city's motion to amend the record and in hearing parol evidence to support same. (3) An effort to agree with property owners and failure in that regard was prerequisite to condemnation for boulevard purposes. See *Leslie v. St. Louis*, 47 Mo. 474; *Ells v. Railroad*, 51 Mo. 200. (4) The condemnation proceedings can not be upheld under article 7 of the city charter, as originally framed, relating to the condemnation of private property for public use. So far as section 3 of the amendments is in conflict with article 7, it necessarily repeals it to that extent by implication. Sutherland on Statutes, sec. 137; *State v. Roller*, 77 Mo. 129. (5) The court erred in excluding evidence tending to

show that the benefit district was unreasonably small. *Corrigan v. Gage*, 68 Mo. 541; *Kelly v. Weeks*, 87 Mo. 96. (6) A description of the property to be taken was absolutely essential. See *Railroad v. Munson*, 57 Mich. 42; *Turnpike Co. v. Hamilton*, 50 Ind. 580; *In re Railroad Co.*, 70 N. Y. 191. (7) The court erred in denying defendants' demand for a common law jury. *Railroad v. Town Site Co.*, 103 Mo. 451; *Railroad v. Cudmore*, 103 Mo. 634. (8) The court erred in not holding the jury of six freeholders, and especially juror Butler, disqualified from service. (9) The court erred in admitting parol evidence as to the delivery of the map. (10) The court erred in admitting evidence as to the action of the park and boulevard commissioners. (11) The court erred in overruling defendants' motion for new trial. (12) The court erred in overruling defendants' motion in arrest of judgment.

*Trimble & Braley* for appellants Kate M. Tootle, F. S. Tootle and J. S. Lemon, curator of Tootle estate, and the Realty Investment Company.

*J. B. Hamner* for Wm. Vineyard, appellant.

*Henry N. Ess* and *John Georgen* for Chas. R. Lockridge, appellant.

*Frank F. Rozzelle* and *Clarence S. Palmer* for Kansas City, respondent.

(1) The common council had authority to pass the ordinance in question without any resolution of the park and boulevard commissioners. Kansas City Charter, art. 7; *Foster's case*, 2 Rep. 107; Potter's Dwarris on Statutes, 154–160; *State ex rel. v. Walbridge*, 119 Mo. 383; Anderson's Law Dictionary, 879; *Manker v. Faulhaber*, 94 Mo. 430. (2) If a resolution of the

board of park and boulevard commissioners had been necessary, the resolution was properly passed and approved by the board of public works and was sufficiently communicated to the common council. *State ex rel. v. City of Kansas*, 89 Mo. 35. (3) The charter does not make an attempt to agree with the property owners, a condition precedent to the institution of condemnation proceedings. Charter Amendments, art. 10, secs. 6, 7. (4) The court admitted all proper evidence on the question as to the reasonableness of the benefit district. The benefit district was not unreasonable. *Kansas City Grading Co. v. Holden*, 107 Mo. 311; *St. Louis v. Ranken*, 96 Mo. 497. (5) *First.* The improvement was for public use. *Kansas City v. Knotts*, 78 Mo. 356; *State ex rel. v. Engelmann*, 106 Mo. 628; *City of Savannah v. Hancock*, 91 Mo. 54. *Second.* The necessity of the exercise of the right of eminent domain is purely a political question. The court can not pass upon it. Cooley on Taxation [2 Ed.]; 2 Dillon on Municipal Corporations, sec. 590, p. 691, 692; Mills on Eminent Domain, sec. 11; *County Court v. Griswold*, 58 Mo. 175; *State ex rel. v. Engelmann*, 106 Mo. 628; *Simpson v. Kansas City*, 111 Mo. 237, loc. cit. 242; *City of Kansas v. Baird*, 98 Mo. 215. (6) The property to be taken was sufficiently described in the ordinance. Charter, art. 7, sec. 2. (7) No formal record of the delivery of the plat to the mayor is necessary. The record shows by implication that it was delivered at the proper time, and the fact is shown by undisputed testimony. Charter, art. 7, sec. 2; *Mining Co. v. Joplin*, 27 S. W. Rep. 406. (8) Juror Butler was not disqualified, and appellants made no proper challenge. Thompson & Merriam on Juries; 1 Thompson on Trials, secs. 98, 114; *Fillion v. State*, 5 Neb. 351; *McComas v. Ins. Co.*, 56 Mo. 573. (9) No appellant had a right to a jury of twelve men. *First.* Kansas City is

not an "incorporated company" within the meaning of section 4, article 12, of the constitution. *Cloud v. Peirce City*, 86 Mo. 357. *Second.* The fact that some other defendant in the case was a corporation gave no right to appellants. *Kansas City v. Hill*, 80 Mo. 523; *St. Louis v. Lanigan*, 97 Mo. 175; *Railroad v. Fowler*, 113 Mo. 458. *Third.* The motion filed by appellants asked for the trial of issues, by a jury of twelve men, which are not required by section 4, article 12, to be tried by jury. *Fourth.* The provisions of the constitution under consideration do not apply to a case of this kind. *State ex rel. v. King*, 44 Mo. 283. (10) The verdict of the jury in this case is justified by the evidence and is conclusive. *St. Louis v. Wetzel*, 110 Mo. 260; *St. Louis v. Lanigan*, 97 Mo. 175; *Quill v. City*, 124 Ind. 292. (11) It sufficiently appears from the ordinance that the land to be taken by this proceeding is in Jackson county, Missouri. Charter of Kansas City, secs. 1, 2, p. 134; sec. 35, sec. 3, description of sixth and seventh wards; *Sutherland v. Holmes*, 78 Mo. 379; *Long v. Wagoner*, 47 Mo. 178; *Howe v. Williams*, 51 Mo. 252; *Norfeet v. Russell*, 64 Mo. 176; 12 Am. and Eng. Encyclopedia of Law, 169, *et seq.*, and notes. (12) The case was submitted under proper instructions. *Muehlhausen v. Railroad*, 91 Mo. 332; *Dougherty v. Railroad*, 97 Mo. 647; *Henry v. Railroad*, 113 Mo. 525; *Barry v. Railroad*, 98 Mo. 62. (13) The alleged defects in the verdict are no defects at all. Taken in connection with the ordinance and plat, all the descriptions are easily understood, except where they are immaterial. *Railroad v. Swan*, 120 Mo. 30; *Railroad v. Fowler*, 113 Mo. 458; *Zeibold v. Foster*, 118 Mo. 349; *Railroad v. Town Site Co.*, 103 Mo. 451.

*Haff & Van Valkenburgh*, also, for Kansas City, respondent.

*W. C. Scarritt* and *John K. Griffith* for respondents Scarritt *et al.*

GANTT, J.—The Realty Investment Company, one of the appellants, has dismissed its appeal in this court.

These proceedings were commenced before the mayor of Kansas City, under ordinance 4972 of that city, approved April 7, 1893, to condemn, for the purpose of widening said street and establishing a boulevard, a strip of land ten feet wide on each side of Independence avenue from Woodland avenue on the west to Gladstone avenue on the east, excepting a short distance on the south side of the street; also a strip of land fifteen feet in width on each side of Gladstone avenue from Independence avenue to St. John avenue; thence a tract or strip of land through the Vineyard property described by straight lines and curves running northeastwardly to the west end of Scarritt avenue; and from that point east it took a strip of land fifteen feet wide on each side of Scarritt avenue to the eastern limits of the city.

At the same time, and as a part of the same ordinance, the common council determined and prescribed a benefit district, within which private property should be deemed benefited by the proposed improvement, which extended back one hundred and fifty feet from the line of the proposed boulevard.

From the verdict in the mayor's court the appellants appealed to the circuit court of Jackson county, at Kansas City. On the ninth of October, 1893, a transcript of the proceedings before the mayor was filed in the office of the circuit court, certified by the city clerk. Various changes of venue were asked for and, finally, upon the disqualification of Judge HENRY,

M. A. Fyke, Esq., a member of the bar, was elected special judge to try the cause.

When the cause came on for trial in the circuit court, and on the first day of November, 1893, the defendant, Alice M. Smart and D. O. Smart, filed a motion to dismiss for the following, among other, reasons, to wit:

"*First.* Because the record fails to show that the city engineer delivered to the mayor a statement by map, plat, or otherwise, containing a description of the property to be taken with the names of the owners thereof.

"*Second.* Because the record fails to show that the board of park and boulevard commissioners selected the route for the proposed boulevard.

*Third.* Because the ordinance under which the proceedings were had was unlawful and irregular, in that it prejudged and predetermined that the city was not to be benefited beyond the sum of $500."

Thereupon, the city filed a motion asking leave to amend the record by filing, in addition to the original transcript already filed, a certain statement alleged to be a part of the record showing the delivery to the mayor of a statement by map or plat containing a description of the property and the names of the owners; and also asking leave to file a certified copy of the resolution of the board of park and boulevard commissioners, together with the approval of the board of public works. The above motion coming on to be heard on the twentieth day of November, 1893, evidence was submitted which showed the following facts:

"*First.* The original transcript filed with the circuit clerk did not contain a copy of the resolution of the board of park and boulevard commissioners selecting the route for the proposed boulevard, nor the approval thereof by the board of public works; *second,*

the original transcript contained no reference whatever to any such resolution or to any such approval thereof; *third*, the evidence was uncontradicted that the resolution of the board of park and boulevard commissioners selecting the route, with the approval thereof by the board of public works, was not presented to, nor received by, the lower house of the common council at the time ordinance number 4972 was passed, nor at any time previous thereto; *fourth*, such resolution and approval were not filed with the mayor, nor offered in evidence, nor used in any way in the mayor's court, while these proceeding were pending therein; *fifth*, the evidence showed that there was no statement, recital or reference in the original transcript filed in the circuit court showing that the city engineer of the board of public works, or one of his assistants, had made out and delivered to the mayor a statement by plat, map or otherwise, containing a description of the private property to be taken and the names of the owners thereof.

To sustain the motion to amend, there was offered in evidence by the city a book labeled "Condemnation Record, No. 24." On page 115 of said book was a statement that a map containing a description of the property and the names of the owners thereof had been delivered to the mayor. This record entry was written by a deputy city clerk November 20, 1893, on which testimony was heard on the motion to amend. The Condemnation Record number 24 contained a copy of the resolution of the park board, but the evidence shows that it had been written therein since the fifteenth day of November, 1893, after the motion to dismiss had been filed by appellants, and over a month after the original transcript was filed with the circuit clerk.

The evidence showed that the map which accompanied the original transcript filed with the clerk of the

circuit court was made out by the city engineer and taken to the mayor's office, where it was delivered to, and examined by, the mayor, and was immediately thereafter taken by said engineer to the city clerk's office and there deposited, and that this map was used in the proceeding before the mayor. And also showed the fact that the resolution of the board of park and boulevard commissioners was received in the upper house of the common council on the third of April, 1893. The resolution shows upon its face, and proof was made of the signatures of the officers, that it was passed by the board of park and boulevard commissioners on the twelfth day of March, 1893, and was duly approved by the board of public works on the twenty-eighth day of March, 1893.

It was also proved that the map or plat furnished by the engineer was made and delivered to the mayor prior to the sending out of the notices by the city clerk summoning the property owners into court. This map was introduced in evidence before the mayor, and it or a copy of it accompanied the transcript of the proceedings in the mayor's court, which was certified by the city clerk to the circuit clerk. There was no recital in the transcript filed with the circuit clerk showing the time when this map was delivered to the mayor, and the map itself had no file marks or receipt of the mayor written upon it.

To all of this evidence these defendants objected on the ground that the record should speak for itself, and that it could not be eked out by parol evidence, and exceptions were saved to the overruling of these objections by the court.

The court sustained the plaintiff's motion to amend the transcript by adding thereto a certified copy of the record of the proceedings of the park and boulevard commissioners, to which ruling these defendants

excepted; but refused to allow the transcript to be amended by filing an uncertified statement to the effect that the map had been delivered to the mayor. The court overruled defendant's motion to dismiss and an exception to the ruling was duly saved.

On the twenty-first of November, 1893, defendants filed additional objections to further proceedings in this cause because on the face of the record the court had no jurisdiction; because the record failed to show that the ordinance was passed by the common council upon the recommendation of the park board and upon the approval of the board of public works, or that any such recommendation or approval was ever made; because said ordinance did not contain a proper description of the property to be taken; because the ordinance did not locate any property to be taken in Kansas City; because the record did not show any attempt upon the part of the city to agree with the owners of the property proposed to be taken as to the purchase price thereof. These objections were also overruled by the court and exceptions saved by these defendants.

Thereafter, on the tenth day of February, 1894, these defendants, who are also appellants here, made demand upon the court by motion for a common law jury to try the case. The record showed that the following, among other incorporated companies, were interested against the exercise of the right of eminent domain in these proceedings: New York Life Insurance Company; Connecticut Mutual Life Insurance Company; Mercantile Loan and Trust Company; Provident Life and Trust Company; Lombard Investment Company; New England Loan and Trust Company; Realty Investment Company. This demand was refused by the court and appellants excepted.

The court then proceeded to impanel a jury of six freeholders. One of the members of this jury, Mr.

John H. Butler, on his *voir dire* stated that at the time said ordinance number 4972, providing for the proposed boulevard, was passed, he was a member of the common council of Kansas City and was very much in favor of it and voted for it and did not know but that he made a speech in favor of it. No specific challenge was made to this juror. Afterward when the six were selected, counsel for Alice and D. O. Smart objected to the six being sworn, because not qualified. His objection being overruled, he excepted. Before the submission of any evidence to the jury, defendants Smart objected to any evidence for the reasons assigned in their motion, and, their objections being overruled, duly excepted.

The ordinance, the resolution of the board of park and boulevard commissioners indorsed with the approval thereof, signed by the president and secretary of the board of public works, a map containing a correct description of all the property to be condemned and all of the benefit district, with the names of all the owners thereon, were offered and read in evidence in the circuit court. Many witnesses testified orally as to the damages and benefits that would ensue or accrue to the various owners abutting on said boulevard. There was evidence to show that the benefits to the property owners would be direct and immediate and would enhance the market value of the property. On the other hand there was evidence tending to show that the taking of this strip for the purpose of widening this street would seriously damage the property of appellants without a corresponding amount of local benefit.

There was also a strong conflict as to the benefit that would result to the city and public generally from the establishment of the boulevard. On the part of the city the testimony of a number of witnesses was to the effect that whatever benefit would come to the city would not be immediate but would follow later as the

result of increased value of this property and could not be estimated in dollars and cents at the time of the trial, whereas the witnesses for appellants, some of whom were real estate men, testified that the benefit to the city and public would be anywhere from $200,000 $1,000,000. Indeed, the lowest estimate of any witness for appellants on this point placed the benefit from $2,500 to $5,000.

The value of the land actually taken, as found by the jury, was $100,000, and the damaged property not taken $41,000. To pay these sums, or $141,000, an assessment was made against the property in the benefit district, excepting the one dollar assessed against the city. Twenty-three thousand, five hundred dollars was assessed as benefits against the property of the appellants, Alice M. Smart and D. O. Smart, and they were allowed as damages about $22,900, their benefits exceeding their damages about $600.

During the hearing the defendants offered to show by a witness that the benefit district was in his opinion unreasonable, and, upon objection, the court refused to permit the witness to state his opinion, and an exception was saved. Various objections were made to the verdict on account of inaccuracies in description.

The court gave written instructions to the jury. No objections were taken to the instructions by any of the appellants except the Tootle heirs, and their exceptions will be considered in the further consideration of the case.

I. Both orally and in their brief the counsel for Mrs. Alice M. and D. O. Smart assert a want of jurisdiction in the circuit court to sustain these proceedings. If they are correct, all further inquiry is needless. They assume that the common council of Kansas City had no authority to proceed to the establishment of the boulevard in question until the board of park and

boulevard commissioners had first selected the routes and streets for the purpose of establishing and maintaining boulevards and had recommended to the common council its action upon such selection and that it was a condition precedent to the passage of the ordinance under which these proceedings were had that the board of public works should have approved the selection made by the board of park and boulevard commissioners, and that the ordinance to be valid must recite these essential prerequisites.

The charter of Kansas City was adopted and became operative May 9, 1889, pursuant to the power conferred by section 16, article 9, of the constitution of Missouri upon cities having a population of more than one hundred thousand inhabitants. By clause 5, section 1, of article 3 of the charter "the mayor and common council are given exclusive control and power over the streets, sidewalks, alleys, landings, public grounds and highways of the city; to establish, open, alter, *widen*, extend, grade, pave, repave, block, reblock, sprinkle or otherwise improve, clean and keep in repair the same," etc. Article 7 provides the method of condemning private property for the purpose of "establishing, opening, *widening*, extending or altering any *boulevard*, street, avenue, alley," etc.

Under these provisions of the charter there can be no doubt of the power of the mayor and common council to establish the boulevard in question nor of their power to *widen* and extend any existing street of said city to accomplish that end. The contention of defendants Smart and wife is based on the amendment to the charter adopted February 7, 1892.

Section 3 of article 10, of the amendments to the charter of Kansas City, adopted at that date reads as follows:

"It shall be the duty of the board of park and boulevard commissioners to select, or to select and purchase as herein provided, real estate for at least one park in every park district, and to select routes and streets for the purpose of establishing and maintaining boulevards in said city, and such board shall recommend to the common council its action upon such selection for either parks or boulevards, and it shall be the duty of the common council to forthwith act upon such suggestion and so proceed to the establishment of a park or boulevard as selected by said board; *provided* that such selection for either park or boulevard be approved by the board of public works; and, *provided, further,* that no boulevard shall be of an established width of less than seventy-five feet, exclusive of the right of way of any street railway thereon."

Article 10 of the charter as amended was adopted in lieu of article 10 of the original charter. Article 10 of the charter was adopted when the charter itself, containing articles 3 and 7, *supra*, was adopted. Article 10, as amended, did not repeal the express grant of power in articles 3 and 7. There are no express words of repeal, and there are no provisions in the amendment which make it impossible for both to stand. There is nothing in the language of the said amendment which requires that the resolution of the board of park and boulevard commissioners should be a condition precedent to an ordinance to widen a street into a boulevard. Section 3 denominates the proceedings of this board as a suggestion. Clearly the naked power to suggest in advance of the action of the common council was never intended to abrogate a power so well defined and clearly expressed, already vested in the common council. The common council was still left free to exercise the power conferred upon it without a suggestion from the board. There is no

such repugnancy between articles 3 and 7 and the amendments as wrought a repeal of the former by implication. *Manker v. Faulhaber,* 94 Mo. 430; *State v. Noland,* 111 Mo. 484; *State ex rel. v. Slover,* 113 Mo. 202; *State ex rel. v. Walbridge,* 119 Mo. 383.

The power of the common council was in no sense dependent upon the action of the board of park and boulevard commissioners, and it was not essential either that the board should have passed the resolution or that it should have been approved by the board of public works, or transmitted to the council, nor was it necessary to recite all these steps in the ordinance itself. The circuit court, therefore, committed no error in overruling the motions to dismiss and the objections to any evidence based on the same grounds.

II. It is also urged that the record nowhere discloses an effort upon the part of the city to acquire the additional strips by amicable agreement. Counsel cite in support of this contention a number of decisions based upon statutes which grant the power to condemn only in case no agreement could be made with the owner of the lands. *Ells v. Railroad,* 51 Mo. 200; *Railroad v. Campbell,* 62 Mo. 585.

But the charter of Kansas City contains no such restriction upon the power of the common council. By section 1, article 7, it is provided that, whenever the city shall provide by ordinance for establishing a boulevard and it becomes necessary to take or damage private property, just compensation shall be paid to the owner, which shall be ascertained and assessed by a jury of six disinterested freeholders of the city by proceedings prescribed by ordinance as in the charter provided. No authority is vested in any officer or agency of the city to agree with the owner, and no fund is made applicable in case an agreement can be effected. Under such circumstances an agreement

could result in no benefit to the owner. *Lingo v. Burford*, 112 Mo. 149; *In re Gardner*, 41 Mo. App. 589.

The only provision in the charter or amendment with reference to an agreement between the city or the board of park and boulevard commissioners with the owner or owners of the property to be taken, is as follows: "If the board of park and boulevard commissioners can agree with the owner or owners of any tract or parcel of land selected for any park or boulevard as to the purchase price thereof   *   *   *   they may further agree to pay for the same in special tax bills   *   *   *." Section 6, article 10, Charter Amendments.

The power to consummate the agreement is by payment in special tax bills. The proceedings under review look to compensation as required by the constitution. The power to condemn a *boulevard* only in case of disagreement is not to be found in the charter, but is thus limited in the acquisition of a *park*. Section 7, article 10, makes the distinction apparent. It reads:

"In case the board of park and boulevard commissioners *can not agree* with the owner or owners of any tract or parcel of real estate selected by them *for a park*, the said board of park and boulevard commissioners is authorized to institute proceedings in the name of the city to the use of the park district in which the tract or parcel of real estate is situated for the condemnation of the same   *   *   *."

The difference between the two sections, the one relating to boulevards and the other to parks, is very marked. Under section 7, an effort to agree with the owner of the land to be taken for a *park seems* to be necessary before a resort can be had to proceedings *in invitum*, whereas nowhere in the charter is to be found language indicating that the common council can condemn land to establish or widen a street only in case it can not agree with the owner. Section 6 of article 10

is permissive altogether, and in no proper sense intended to curtail the authority given in article 7.

III. Again, it is insisted that the failure of the mayor's record to recite the filing of the map is fatal. By section 2, article 7, of the charter, the city engineer of the board of public works, or one of his assistants, is required to make out and deliver to the mayor or the speaker of the lower house, as the case may be, a statement, by plat, map, or otherwise, containing a correct description of the several lots or parcels of private property, which any ordinance shall require to be taken or damaged, together with a correct description of the several lots or parcels deemed benefited and to be assessed to pay compensation, and containing also the names of the owners or claimants of said several tracts or parcels. It stands confessed that the engineer did prepare the map as required, and did deliver it to the mayor, and it was filed in the office of the city clerk, and when this was done it became a part of the record, *without any file marks.*

It is clear that this map was not to be made until after the ordinance was adopted. There is no requirement that a record should be made of its filing. It was evidently intended to furnish a list of the owners whereby they might be notified and to aid the mayor's court and the circuit court in their hearing of the cause. It was simply a step in a proceeding of which the mayor had jurisdiction. The evidence was to be furnished the mayor to enable him to perform his duties intelligently and he was to be satisfied by judicial inquiry that all the owners were notified and that a correct description of the property to be condemned was before him. His jurisdiction did not depend upon the filing or the correctness of the map.

It was ruled in *Leonard v. Sparks,* 117 Mo. 103, that the mayor under this charter is invested with the

power of a circuit court for conducting such proceedings of this character, and the same presumption would be indulged in favor of the correctness of his action. As the filing of the map was not jurisdictional, and undisputed evidence establishes it was prepared and delivered as required by law, this point must be ruled against appellants.

IV. The juror Butler was not challenged for cause. The *omnibus objection* to the whole panel *because they were not qualified* was entirely too indefinite to entitle it to a review by this court. The grounds of challenge to a juror must be stated when he is offered and tested on his *voir dire*. The trial court is entitled to know the reason for the challenge. *State v. Brownfield*, 83 Mo. 453, 454; Thompson & Merriam on Juries, sec. 253 and cases cited; 1 Thompson on Trials, sec. 98.

V. All the appellants unite in assigning as error the refusal of the circuit court to award them a jury of twelve men, but they differ greatly in the reasoning by which they attempt to establish their common claim. Counsel for Vineyard asserts he was entitled to a jury because the city was a corporation and incorporated companies were defendants. Counsel for the Tootle heirs insist that a proper construction of the constitution will entitle every party to a common law jury of twelve in all proceedings where the right of eminent domain is to be exercised or enforced; whereas Mrs. Alice M. Smart and D. O. Smart base their demand on the ground simply that several incorporated companies were defendants. They all concede that their several claims must rest upon section 4 of article 12 of the constitution of this state, which ordains that "the right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be

interested either for or against the exercise of said right."

Prior to the adoption of the constitution of 1875 the right of jury trial was not secured by the constitution or laws of this state in proceedings for the condemnation of property in the exercise of eminent domain. It was so held in *Louisiana, etc., Road Co. v. Pickett*, 25 Mo. 535, and the right to demand a jury of twelve has never been recognized by this court since the adoption of the present constitution, save in those cases which fall within section 4, article 12, just quoted. *City of Kansas v. Hill*, 80 Mo. 523; Lewis on Eminent Domain, sec. 311.

All the claims of the several appellants to a jury of twelve by virtue of section 4, artle 12, of the constitution have been considered by Judge MACFARLANE in the cause of *Kansas City v. Vineyard, ante*, p. 75. I am entirely satisfied both with his reasoning and the conclusions reached and hence deem it unnecessary to repeat what he has said or attempt a more satisfactory exposition, but merely state his conclusions without elaboration. He most clearly demonstrates that a municipal corporation is not an incorporated company within the meaning of the constitution. *Heller v. Stremmel*, 52 Mo. 312; *Cloud v. Peirce City*, 86 Mo. 357; *Mayor v. Ray*, 19 Wall. 475; 1 Dillon on Municipal Corp., sec. 20; *Philadelphia v. Fox*, 64 Pa. St. 180. It results, then, that the mere fact that the city is a party plaintiff does not entitle any defendant to a jury of twelve.

In this case, as in *Kansas City v. Vineyard, supra*, no incorporated company is now before this court appealing, so that if either of the appellants is entitled to a jury it must result from the fact that "incorporated companies" owned some of the lots, or parcels of land which the city sought to condemn, and the

right of appellants is derived from their association with parties who could have demanded a jury but have elected to waive that privilege. That it was perfectly competent for either party entitled of right to a jury to waive it, is settled by our decisions. *Merrill v. St. Louis*, 83 Mo. 244; *Railroad v. Story*, 96 Mo. 611; *Railroad v. Town Site Co.*, 103 Mo. 451.

The claim here is that the proceeding is an *entirety* and, therefore, any party to a proceeding in which an incorporated company is interested for or against the right may demand a jury, although the incorporated company may waive its right. The right of trial by jury is guaranteed only in trials *for compensation* when "any incorporated company shall be interested for or against the exercise of said right." *Railroad v. Railroad*, 118 Mo. 599. Now, it is apparent no "incorporated company" is interested *for* the exercise of the right in this case. The incorporated companies were interested alone *against* the right, and the city or the incorporated companies either could have demanded a jury of twelve. Each waived it. No person is interested in the *compensation* to be awarded these incorporated companies, except the city and the companies.

As to all other parties the constitution specifically prescribes that their compensation shall be ascertained by "a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law." Sec. 21, art. 2, Const. of Mo.

The foregoing conclusion we think is absolutely correct if we are right that as to compensation each property owner bears a distinct relation to the condemning party, but we recur now to the claim that this proceeding is an *entirety*, so completely so, that any property owner, it matters not how small or great his interest, nor that he has been awarded full and adequate compensation by the commissioners, may

overturn the whole proceeding because the trial court did not award some incorporated company a jury of twelve, notwithstanding the incorporated company has not appealed and is not complaining.

This claim of entirety is not new in this class of cases. It was met and confuted in *St. Louis v. Lanigan*, 97 Mo. 175. In that case it was urged that the proceedings were erroneous because the husband of one non-appealing defendant was not made a party and because another who was a party was not served, but this court disposed of the complaint by holding that the appellant therein "had no right to the reversal of a judgment for errors which did not affect him," citing *Mead v. Brown*, 65 Mo. 552, and pointing out that "our statute forbids this court to 'reverse the judgment of any court, unless it shall believe that error was committed by such court *against the appellant or plaintiff in error*, and materially affecting the merits of the action.'" See section 2303, R. S. 1889.

Each property owner in a proceeding like this is independent of the others as to the damage or benefit to his property and there is no such common interest as will justify a court of equity entertaining a bill to prevent a multiplicity of suits. Such an improvement may greatly benefit one abutter and as signally damage his neighbor. *City of Kansas v. Hill*, 80 Mo. *loc. cit.* 538.

It seems to us that, construing all the provisions of the constitution together, it is very plain that the constitution guarantees "the historical jury" of twelve only for or against incorporated companies in proceedings to exercise eminent domain, and this was to guard against prejudice in favor of or against private corporations exercising that right or affected by it and this constituted an exception. As to all other persons the board of commissioners, not less than three, was

deemed sufficient. If the incorporated companies waive that right, no other party has any just cause of complaint. The exception was not created for his benefit. The failure or refusal, then, to award the Realty Investment Company, or any other interested incorporated company, a jury of twelve can not avail either of the appellants here.

VI. Another ground of complaint is that the circuit court erred in excluding evidence tending to show that the benefit district, defined and established by the ordinance, was unreasonably small. The power to determine what shall be the tax district for the purpose of a street improvement of this nature is a legislative power vested in the common council. In no sense is it a question for the jury. The courts uniformly hold that they have no right to interfere with this legislative discretion. Cooley on Taxation [2 Ed.], ch. 5, p. 149; *People ex rel. v. Brooklyn*, 4 N. Y. 419; *Kansas City v. Morton*, 117 Mo. 446; *Kansas City Grading Co. v. Holden*, 107 Mo. 305; *St. Louis to use v. Oeters*, 36 Mo. 456; *Keith v. Bingham*, 100 Mo. 300.

The common council of Kansas City has the power and must define the limits within which private property shall be deemed benefited by the widening of a street, subject to the power of the courts to declare the ordinance void if it appears unreasonable and arbitrary; and the benefit district established by this ordinance is not so unreasonable that this court or the circuit court could declare it void. With this question the jury has nothing to do. The council, however, can not assess the benefit to any individual lot or tract within the tax district—that is the function of the board of commissioners or jury. *Kansas City v. Baird*, 98 Mo. 215.

VII. The objection is made that, because the commissioners only assessed one dollar against the city at large, therefore there was no such public use as to jus-

tify the proceedings. That the use to which the condemned strips are devoted is public, is manifest on the face of the record. "The taking of private property for a public street is an appropriation for public use." *State ex rel. v. Engelmann,* 106 Mo. 628; *Savannah v. Hancock,* 91 Mo. 54; *Kansas City v. Knotts,* 78 Mo. 356. It is entirely immaterial that the cost of opening or improving the street was paid by assessment of benefits against the abutters.

VIII. The Tootle heirs challenge the instructions of the court. They have confined their criticisms in this court to two of the instructions only, viz., the one numbered 2 given at the instance of respondent and number 10 asked by John E. Owens.

The objections urged against instruction number 2 are that it directed the jury to ascertain the whole amount of the damages and then assess against the city the amount of benefit to the city and public generally, and the balance of such damages they should assess against the property in the benefit district.

This instruction is in exact conformity to section 3, article 7, of the charter. The power was given by the constitution to the people of Kansas City to frame a charter containing the power in the common council to prescribe the limits within which private property shall be deemed benefited by the proposed improvement, and the courts have no power to enlarge or contract these limits.

As already said, the courts having general jurisdiction may adjudge such an ordinance void because unreasonable and arbitrary in a proper proceeding. *Kansas City v. Morton,* 117 Mo. 446; *Copeland v. St. Joseph,* 126 Mo. 417. But the legislative authority having determined that the property within the benefit district should pay all the compensation for the property taken or damaged, not assessed against the city

for benefit accruing to the city and public *generally*, and the ordinance being valid, it was absolutely correct to require the tax by way of benefit to be levied for the balance on that district.

The question of unreasonableness does not properly arise upon this record, because the jury has found the property in that district was benefited $140,186.

There was no error in the tenth instruction in regard to the damages to Owens' property. The court instructed generally as to the manner of assessing benefits in the second, thirteenth and fifteenth instructions.

IX. Counsel for the different appellants attack the verdict of the jury as unjust and indicating a wanton disregard of the rights of their claims. Great stress is laid upon the fact that the benefit to the city was assessed at one dollar. This leaves out of view that the jury has simply said that their property is worth as much now as it was before the streets were widened. They doubtless considered that after the street was improved the ordinances of the city required the strip to be kept up and maintained at the expense of the public and the park district. For weeks the jury heard all the testimony and went upon the ground and as freeholders viewed and weighed the whole case, under correct instructions from the court, and this court as an appellate tribunal, under the circumstances, has no right to interfere with their finding.

In *St. Louis v. Lanigan*, 97 Mo. 175, under similar circumstances this court, through SHERWOOD, J., said: "It has been established by a long line of decisions, so numerous as not to require their citation, that in law cases, aside from those where mistake, fraud, prejudice or passion manifest themselves in the rendition of a verdict, that this court will not interfere by weighing the evidence on which the verdict is founded. Obviously, the same rule must obtain in all other law

cases.   The court below has advantages which this
court does not possess, and can not possess, in relation
to the demeanor of witnesses who testify respecting the
litigated matter.   Even in equity cases, we defer some-
what to the views of the trial court.

"Besides, in cases of the sort now under consider-
ation, it is to be observed that the judgment of the
commissioners is not formed exclusively upon evidence
submitted to them; they are required to view the prem-
ises, and they have the advantage of an actual personal
inspection; and they are to be guided to some extent
by that.   Selected because of their capacity and fitness
for the position they are called upon to fill; required to
be disinterested; sworn to a faithful discharge of the
duties imposed upon them, their report should not be
set aside but upon satisfactory grounds; the testimony
of witnesses as to value, whether heard before the com-
missioners, or subsequently, by the court on exceptions
filed, though entitled to due consideration, is not con-
trolling; and, 'unless the court is clearly satisfied that
they have erred in the principles upon which they have
made their appraisal, there is nothing for review, and
their report should not be disturbed.' " *Kansas City
v. Butterfield*, 89 Mo. 646; *Kansas City v. Baird*, 98
Mo. 215; *Garland v. Smith*, 127 Mo. 567.

X.   The appellants also point out various defects
and irregularities in the verdict.   No party in whose
property these alleged defective descriptions exist has
made complaint, except Mr. and Mrs. Smart.   It is suf-
ficient to say they can not avail themselves of any
supposed injury to other parties not appealing.   The
assignment as to lot 117, D. O. Smart's addition, is
evidently based upon misapprehension of the record.
The error is in appellants' abstract.

The mistake in the description affecting lot 118, D.
O. Smart's addition, refers to a five-foot curve.   When

the ordinance is referred to, any seeming difficulty is obviated, as the ordinance must control, and can be called to the aid of, the verdict, and the same may be said as to lot number 78. The ordinance describes a curve to the right from a tangent along the north line of Independence avenue, and this description takes the least land.

The judgment will not be reversed on account of the failure to allow Jesse N. Johnson compensation. He was duly notified that his land within the limits of the street would be taken, and when and where the hearing would be had to fix its value. The judgment of the court condemns it and he is not complaining.

It is not at all remarkable that a proceeding affecting four hundred different tracts should have developed some inaccuracies. It is suggestive of very careful work that only four are complaining.

XI. Finally, it is claimed the proceedings must fall because the record nowhere discloses the property sought to be condemned is in the state of Missouri or Jackson county. As to this it will suffice to say that the charter of Kansas City is a public act, of which we are required to take notice. By section 2, article 1, of the charter, it is provided that the corporate limits of Kansas City shall include all that district of country in the county of Jackson, state of Missouri, setting forth the boundaries by the surveys of the United States government, the state line and the Missouri river. The ordinance is the act of this incorporated city, and the description of the streets upon which this improvement was proposed clearly brings it within the corporate limits of Kansas City.

The record is devoid of material errors, and the judgment of the circuit court is affirmed. BRACE, C. J., SHERWOOD, MACFARLANE, BURGESS and ROBINSON, JJ., concur; BARCLAY, J., dissents.