The State ex rel. The Attorney General v. Dolan.

---

THE STATE *ex rel.* THE ATTORNEY GENERAL v. DOLAN.

1. **Judicial Notice :** MUNICIPAL CENSUS : STATUTES.  Under section fifteen, of the acts of the General Assembly of March 10, 1887, (Laws, p. 45), the courts will take judicial notice that the City of Kansas contains more than one hundred thousand inhabitants, according to its last municipal census, made in pursuance of the laws of the state (Laws 1883, p. 38), and an ordinance thereunder.

2. **Constitution :** TITLE OF ACT.  Section fifteen, *supra*, is germane to the subject embraced in the title of the act of 1887, of which it is a part, and is otherwise constitutional.

3. **Statutes :** REPEALS BY IMPLICATION : SUPERVISOR OF REGISTRATION. Article ten, of the charter of Kansas City (Laws 1875, p. 257), pro-

| | |
|---|---|
| 93 | 467 |
| 39a | 418 |
| 93 | 467 |
| 121 | 71 |
| 122 | 73 |
| 93 | 467 |
| 74a | 199 |
| 93 | 467 |
| 145 | 489 |
| 93 | 467 |
| 154 | 478 |
| 93 | 467 |
| 164 | 54 |

viding for the election, by the city, of a supervisor of registration, and for the registration of voters by him, was repealed by the act of the legislature of March 31, 1883, directing the registration of voters in cities of more than one hundred thousand inhabitants, and creating therein the office of recorder of voters.

4. ——— : ———.  A later statute will repeal, by implication, a prior one, when the repugnancy between them is such that they cannot stand together or be consistently reconciled.

## *Quo   Warranto.*

JUDGMENT OF OUSTER AWARDED.

*B. G. Boone*, Attorney General, *J. W. Wofford, O. H. Dean* and *James Hagerman* for relator.

(1)   Courts will take judicial notice of the population of cities as shown by census.  *State ex rel. v. Herman*, 75 Mo. 340 ; *Devine v. Cook*, 84 Ill. 590 ; 1 Greenl. Evid., sec. 56.   (2)   Kansas City having a population of more than one hundred thousand inhabitants, the appointment of John C. Hope, by the Governor, was, under the act of 1883 (Laws, p. 38–47) legal, and had the effect of abolishing the office of supervisor of registration, as created by article ten, of the city charter.  Laws 1875, p. 257 ; *Ewing v. Hoblitzelle*, 85 Mo. 64.   (3)   In determining the question whether the respondent has a right to hold the office of supervisor of registration of Kansas City, this court can and must adjudicate the right of Hope to the office of recorder of voters, because it is necessarily involved in the determination of the issue between the state and the respondent.   High's Ext. Leg. Rem., sec. 712 ; *People v. Miles*, 2 Mich. 348 ; *State v. Bole*, 46 Mo. 528 ; *State v. McDiarmid*, 27 Ark. 176.

*R. W. Quarles* and *W. A. Alderson* for respondent.

(1)   The census taken under the city ordinance was not for a general, but for a special, purpose, that is, to

secure "such other incorporation as its population may entitle it (the City of Kansas) to under the constitution and laws of the state." Laws 1885, p. 64, sec. 9. (2) The census was taken nearly two years before the act of March 10, 1887. (3) Section fifteen of said act is unconstitutional, being in conflict with section twenty-eight, article four of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title." (4) The registration act of 1883, being a general law, and the charter of the City of Kansas being a special law, the latter must prevail over the former, and the registration of 1883 is inapplicable to the City of Kansas, conceding, for this argument, that the City of Kansas has a population of more than one hundred thousand inhabitants. *State v. Binder*, 38 Mo. 450 ; *Mauro v. Buffington*, 26 Mo. 184 ; *State v. MacDonald*, 38 Mo. 529 ; *State v. Fiala*, 47 Mo. 310 ; *St. Louis v. Ins. Co.*, 47 Mo. 146 ; *Finney v. Brant*, 19 Mo. 42 ; *Speilman v. Shook*, 11 Mo. 340 ; *State v. DeBar*, 58 Mo. 395 ; *McVey v. McVey*, 51 Mo. 406 ; *Railroad v. Cass County*, 53 Mo. 17 ; *St. Louis v. Ins. Co.*, 53 Mo. 466 ; *Smith v. Clark County*, 54 Mo. 58 ; *State v. Clark*, 54 Mo. 17 ; *State v. Green*, 87 Mo. 583 ; Sedg. Const. of Stat. and Const. Law (2 Ed.)

NORTON, C. J.—This is an original proceeding by *quo warranto* which challenges the right of John Dolan to the office of supervisor of registration in and for the City of Kansas, and it is averred in the information that said city has a population of more than one hundred thousand inhabitants, and that, by reason of that fact, and an act of the legislature " to provide for the registration of all voters in cities having a population of more than one hundred thousand inhabitants, and to govern elections in such cities, and to create the office of recorder of voters," etc., approved March 31, 1883 (Acts 1883, p. 38), that so much of the tenth article of the

charter of said city, creating the office of supervisor of registration, was repealed, and that all the duties and functions of the office were devolved upon one John C. Hope, who had been appointed and commissioned by the Governor, in pursuance of the provisions of said act of 1883, recorder of voters for said city, and who had duly qualified under said appointment.

The said Dolan is called upon, by the information, to show cause why he should not be ousted from said office, and in his answer denies that the City of Kansas has or ever had a population of more than one hundred thousand inhabitants, denies that he is an intruder in said office, and avers that he is rightfully in said office and performing his duties; that, at the general election held in said city in April, 1887, he was, in pursuance of article ten, of the charter of said city, duly elected, by a majority of the votes cast at said election, supervisor of registration for one year; that he secured his certificate of election, and took the oath of office prescribed, before entering upon its duties. The issues thus made up present for our determination two questions of fact, and one of law, viz., did the City of Kansas, at the time alleged, have a population of more than one hundred thousand? The question of law is: If it had such population does the said act of March 31, 1883, creating the office of recorder of voters in cities containing that population, repeal, either expressly or by necessary implication, so much of article ten of the charter of said city as created the office of supervisor of registration? An affirmative answer must be returned to both questions before a writ of ouster can issue, and a negative answer to either one denies the writ.

To establish the disputed fact, the state has put in evidence an ordinance of the city, approved September 17, 1885, requiring the enumeration or census of the inhabitants of the City of Kansas to be taken, and providing the manner and time in which the same shall be

done, and appropriating the sum of two thousand dollars out of the expense fund to pay for the same. It is also in evidence that, under said ordinance, T. ⎰R. Tinsley was appointed to take said census, and that he did take it, and on the second day of November, 1885, reported the result to a regular meeting of the common council, all the members being present, and the following entry was made on the record, viz., "Report of T. R. Tinsley, supervisor of the census, showing the population of Kansas City to be 105,042, was read and filed." The enumeration set forth in said report is as follows:

| | | |
|---|---|---|
| Total number of males | | 65,680 |
| Total number of females | | 39,362 |
| Total number of whites | 93,568 | |
| Total number of colored | 11,328 | |
| Total number of Chinese | 146 | |

Grand total number of actual inhabitants. 105,042

The passage of said ordinance requiring the enumeration or census to be taken, was fully authorized by section 9, of an act "to authorize any city containing more than twenty thousand, and less than two hundred and fifty thousand inhabitants, existing by local or special law, to extend its limits, * * * and cause an enumeration of its inhabitants to be made and its population ascertained." Acts, 1885, p. 63. Said section 9 is as follows: "Any such city may, at any time, by an ordinance, and at the expense of the city, cause an enumeration of its inhabitants to be made and its population ascertained, and such census, when so taken, shall have the like force and effect as a state or national census to authorize such city to proceed in securing such other incorporation as its population may entitle it to under the constitution and laws of this state."

It being shown by the census taken by Tinsley, in pursuance of a law of the state and ordinance authorizing it, that the City of Kansas contained more than

one hundred thousand inhabitants, the question remains, can we take judicial notice of that fact, and this question, we think, is answered by section 15, of an act of March 10, 1887 (Acts, 1887, p. 45), which is as follows: "The courts of this state shall take judicial notice, without proof, of the population of all cities in this state, according to the last enumeration of the inhabitants thereof, state, federal, or municipal, made under or pursuant to any law of this state, or of the United States." It is claimed by counsel that the above section is not germane to the subject embraced in the title of the act, and is, for that reason, invalid. This claim is not well founded. The title of the act is as follows: "An act providing that any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government and regulating the same."

As a condition precedent to the right of any city to avail itself of the privileges of the act, it must have the population named. It was, therefore, necessary that some mode of ascertaining that fact should be provided, and some rule laid down for its ascertainment, and, accordingly, in section 14 of the act, it is provided that any city might have a census taken for the purpose of ascertaining its population, and said section 15 was evidently intended to dispense with the necessity of taking a census, where the population had been ascertained by a census which had theretofore been taken, and in either case courts are required to take judicial notice of such census. We perceive no foundation for the claim made, that said section 15 is violative of section 15, of article 2, of the constitution. It is not an *ex post facto* law; it does not impair the obligation of a contract, nor is it retrospective, but it simply lays down a rule for the future guidance of courts as to what they shall take judicial notice of. The views above expressed return an affirmative answer to the first question hereinbefore stated.

It is, however, insisted by counsel, that even if the City of Kansas had the requisite population to bring it under the operation of the said act of March 31, 1883, that said act does not repeal article 10 of the city charter (Laws, 1875, p. 257), and in support of this contention, we have been cited to a number of cases decided by this court, to the effect that repeals by implication are not favored, and that a general statute will not impliedly repeal a prior local or special statute, unless there is such a positive repugnancy between the two that they cannot stand together, or be consistently reconciled. That such repugnancy, as above indicated, exists between the said act of 1883, providing for the registration of voters in cities having over one hundred thousand inhabitants, and article 10 of the city charter, we think, is clear. The act of 1883 was intended to operate only in such cities as have such population, and it declares that, in the cities where it has operation, there shall be a recorder of voters appointed by the Governor, whose duty it shall be to register voters therein as prescribed in the act. On the other hand, said article 10 of the charter provides that there shall be a supervisor of registration who shall perform the duty of registering the voters as prescribed by article 10, of the charter. Both of these laws cannot operate in the same locality at the same time, and it is as impossible to reconcile the conflict between them as it is to prove that two bodies can occupy the same space at the same time. This question was considered in the case of *Ewing v. Hoblitzelle*, 85 Mo. 64, and it was held that certain provisions of the charter of the city of St. Louis, that were in conflict with the act of 1883, were repealed by said act.

The views above expressed return an affirmative answer to the second question hereinbefore stated, and judgment of ouster is hereby ordered, as prayed for by the state. All concur.