The State v. Hutton.

---

STATE OF MISSOURI, Respondent, v. WILLIAM H. HUTTON, Appellant.

**St. Louis Court of Appeals, February 18, 1890.**

1. **Criminal Law : LOCAL OPTION : INDICTMENT.** An indictment for the violation of the statute, known as the local option law, need not allege all the various steps which led to the adoption of that law; it is sufficient to allege in general terms that the act of the legislature, approved April 5, 1887, and commonly known as the local option law, had been adopted and was in force at the place and time at which the offense is charged to have taken place.

2. ——— : ——— : EFFECT OF SALE BY MERCHANT. An act in violation of the local option law is punishable under that law, though it is also a violation of the provisions of Revised Statutes, 1879, chapter 129, concerning merchant's licenses.

3. ——— : ——— : RECORD OF COUNTY COURT. The statute does not require the records of the county court to recite the presentation to that court of proof of the publication of the notice of the election, held under the local option law, or to recite that publication had been made of the result of the election.

4. ——— : ——— : EFFECT ON SPECIAL TOWN CHARTERS. The local option law applies to every town, operating under a special charter or not, whether having more or less than twenty-five hundred inhabitants.

*Appeal from the Scott Circuit Court.*—HON. H. C. O'BRYAN, Judge.

AFFIRMED.

*Marshall Arnold,* for the appellant.

(1) The defendant was indicted and convicted for a violation of the local option law. The indictment does not allege that the notice of the election was published for "four consecutive weeks" or twenty-eight days, the last insertion being "within ten days next before such election." (2) The evidence develops the fact that the appellant sold as a merchant. If there was any violation at all, it was punishable under the merchant's act. See Acts, 1887, p. 217. The minimum punishment under this law is a fine of one hundred dollars. Our supreme court have held that the local option law did not repeal the druggist act, but simply suspended the dramshop law. *Ex parte Swan,* 96 Mo. 44. By parity of reasoning it cannot be said to repeal the merchant's law. (3) The action of the trial court in the admission of the testimony offered by the state to establish the notice of the election, and the publication of the result thereof, constituted reversible error. Even if admissible under any circumstances, no foundation was laid for its introduction. *Davis v. Hilton,* 17 Mo. App. 319. 1 Greenl. Evi. [13 Ed.] sec. 82, p. 105. The notice of the election, and the publication of the result thereof, are each indispensably necessary to give vitality to the law. This is obvious, both from an examination of sections 3 and 5 of the act itself, and of the principle announced in *State ex rel. v. Tucker,* 32 Mo. App. 620; *Bean v. County Court,* 33 Mo. App. 635; *Phillips v. State,* 23 Tex. 304. (4) Upon the proposition that the adoption of the local option law in Scott county did not repeal the charter of the city of Commerce, appellant submits the following authorities: *State v. Clark,* 54 Mo. 17; *State v. DeBar,* 58 Mo. 395; *State v. Green,* 87 Mo. 583.

*Albert DeReign,* for the respondent.

(1) The indictment was sufficient. It was not necessary to allege that the notice of election was duly

given, nor the time of notice, .in the indictment. This may be treated as surplusage. *State v. Houts*, 36 Mo. App. 265; *Neighbors v. Commonwealth*, 9 S. W. Rep. 718. The order of the county court requiring notice of election is unobjectionable. The local option law requires the notice to be .published for "four consecutive weeks." The county court employs this identical language in its order. (2) While the evidence shows that· appellant sold intoxicating liquors as a merchant under the ordinances of the town of ·Commerce, he cannot, on that account, claim that his punishment should have been fixed as prescribed by the merchant's act of 1887, page 217. The merchant's act has no application in counties having adopted local option. To hold otherwise would simply transfer the sale of intoxicating liquors from the saloon of the dramshop keeper to the store of the merchant, practically nullify the law and maintain the very evils sought to be prevented by it. Laws, 1887, p. 181, sec. 6; *Commonwealth v. Jarrell*, 5 S. W. Rep. 763; *Commonwealth v. Stickwood*, 5 S. W. Rep. 580. The state did not supply the records of the county court by parol testimony. The records themselves were introduced, showing the orders of the county court relative to the election and adoption of the law. It clearly appears from these records that the law was adopted and in force at the time of the unlawful sale. The parol evidence offered by the state to establish the fact of publication of notices as required by the act, was simply cumulative evidence. It is nowhere made the duty of the county court to make a record of the publication of the result of the local option election. The law shall go into effect from the date of the last insertion of the notice in the newspaper. This evidently makes the newspaper the evidence of this fact. Even if this had been recorded, it is doubtful if it would be considered competent to prove that the publication had actually been made. "A record is

not evidence of matters stated in it, which it was not the officer's duty to record." *Childers v. Cutter*, 16 Mo. 24. The act of 1873, chartering the town of Commerce, in its provisions regulating the liquor traffic, is irreconcilably in conflict with the subsequent general statutes regulating the same subject. The two acts cannot stand together. *In re Wooldridge*, 30 Mo. App. 619; *State ex rel. v. Dolan*, 93 Mo. 467; *State ex rel. v. Francis*, 95 Mo. 44; *Slate v. Bennett*, 11 S. W. Rep. 264; 1 Bishop Criminal Law, sec. 197; Laws, 1883, p. 89, sec. 8.

THOMPSON, J., delivered the opinion of the court.

This was a prosecution under the statute known as the local option law. The indictment charges "that, at a term of the county court of Scott county aforesaid, held at the court house in the town of Benton, in said county, commencing on the seventh day of November, 1887, there was presented to the county court of said county a petition signed by more than one-tenth of the qualified voters of said county, and the said petition asked and prayed the said county court to order a special election in, and for, said county, and submit to the qualified voters voting thereat to determine whether or not the provisions of the local option law should take effect and operate in the county of Scott aforesaid, and to determine whether or not spirituous and intoxicating liquors, including wine and beer, should be sold in said county. That said county court of said county, then and there being satisfied of the sufficiency of said petition, at its said November term, 1887, on the ninth day of November, 1887, did appoint December 9, 1887, as the day, by its order made of record, that a special election should be held at all the voting precincts in said county of Scott, on the said ninth day of December, 1887, and, by its order so made of record, to submit to the qualified voters of said county, voting at said special

election, to determine whether or not the provisions of the local option law should operate and take effect in said county, and to determine whether or not spirituous and intoxicating liquors, including wine and beer, should be sold within the limits of Scott county aforesaid, and that, prior to said special election, general publicity and notice thereof were duly given and published for four insertions for four consecutive weeks in the *Benton Record*, a newspaper published in said county, the last insertion being within ten days next before the election; and that judges and clerks to hold said election were appointed and qualified in the same manner as in general elections for state and county officers; and that, on said ninth day of December, 1887, said special election was duly held at the several voting precincts in said county, in the same manner that general elections are conducted; and that, at said election, ten hundred and eighty votes were cast by the qualified voters voting thereat against the sale of intoxicating liquors, and nine hundred and thirty-four votes were cast by the qualified voters voting at said election for the sale of intoxicating liquors, which result was duly entered of record in said county court and published in the *Benton Record*, the same newspaper in which notice of said election was published, for four consecutive weeks, the last insertion being on the second day of February, 1888. And the grand jurors aforesaid present that one William Hutton, on the thirty-first day of October, 1888, at the county of Scott, and state of Missouri, did then and there unlawfully sell one-quart of whiskey for the price and sum of one dollar, without having any legal authority so to do, against the form of the statute in such case made and provided, and against the peace and dignity of the state.'' The case was tried before the court sitting as a jury, a jury having been waived, and the court found the defendant guilty, as charged in the indictment, and

imposed a fine of three hundred dollars. From the judgment so rendered the defendant prosecutes this appeal.

It was admitted by the defendant, for the purposes of the trial, that on the thirteenth day of October, 1888, he sold one quart of whiskey at the price of one dollar, by virtue of his license as a merchant from the city of Commerce; that said sale was made within the corporate limits of said city; and that said city has a population of less than twenty-five hundred inhabitants.

This admission left, as the only question for the consideration of the court, (1) whether the local option law had been regularly adopted by the qualified voters of Scott county, and (2) the effect of said law on a sale, claimed to have been made as a merchant under a merchant's license issued by the town of Commerce. We shall take up the points which are made by counsel for the appellant in the order in which they are presented.

I.   The first objection is that the indictment does not aver that the notice of the election was published for "four consecutive weeks," or twenty-eight days, the last insertion being "within ten days next before such election." It will be observed, on an inspection of the indictment, that it does so allege. It states that, " prior to said special election, general publicity and notice thereof were duly given and published by four insertions, for four consecutive weeks, in the *Benton Record*, a newspaper published in said county, the last insertion being within ten days next before the election." This is almost in the exact words of section 3 of the statute. Act of April 5, 1887, Laws of 1887, page 181. There is nothing in the decision of the Kansas City Court of Appeals in *State ex rel. v. Tucker*, 32 Mo. App. 620, which requires us to construe an averment in the very language of the statute, as meaning something different from the statute.

But we take occasion to observe, as we did in the case of *State v. Searcy, ante*, p. 393, that it is not

necessary that the indictment should allege the various steps which led to the adoption of the local option law. It is sufficient to allege, in general terms, that the act of the legislature, approved April 5, 1887, commonly known as the local option law, had been adopted and was in force in the county on the date on which the offense is charged. We say, "and was in force," because it is apparent from the statute that the mere adoption of the law by an election in compliance with the terms of the statute is not sufficient, but that it is put in force by publication of the result of the election prescribed by section 5 of the statute.

II. The next objection is that, as the evidence shows, that the defendant sold as a merchant, if he violated any law, it was the "merchant's act." This act, as amended by the act of March 24, 1887, recites: "No such license shall authorize any merchant to sell vinous, fermented or spirituous liquors in any quantities, to be drank at his store, stand or warehouse, or other place of business, nor in any quantity less than five gallons, for any purpose whatever. Any merchant who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor, and on conviction shall, for the first offense, be fined not less than one hundred nor more than five hundred dollars, or by imprisonment in the county jail not less than three nor more than six months." Session Acts, 1887, p. 217.

We shall have to construe the local option law as meaning what it says. And it says, "that if a majority of the votes passed at any election held under the provisions of this act shall be against the sale of intoxicating liquors, it shall not be lawful for any person, within the limits of such county * * * to directly or indirectly sell, give away or barter in any manner whatever, any kind of intoxicating liquors or beverage containing alcohol, *in any quantity whatever*, under the penalties hereinafter prescribed." To this it creates certain exceptions which need not be noticed,

because they do not include the case of selling under a merchant's license.

III. The next objection is that the record of the county court, touching the adoption of the local option law in Scott county, which was put in evidence, does not recite the publication of the notice of the election, as required by section 3 of the local option statute. The statute recites "that notice of such election shall be given by publication in some newspaper published in the county, and such notice shall be published in such newspaper for four consecutive weeks, and the last insertion shall be within ten days next before such election, and such other notice may be given as the county court or municipal body ordering such election may think proper, in order to give general publicity to the election." The order of the county court, directing the election to be held, ordered that "notice of such election be given by publication in the *Benton Record*, a newspaper published in said county, which notice shall be published for four consecutive weeks, the last insertion to be within ten days next before such election." The statute nowhere provides for any form of proof of publication being made to the county court and spread upon the records of that court; and in the absence of such a statutory provision, if the county court should have required proof of publication in the mode prescribed for judicial notices and had spread this upon its record, it may well be doubted whether it would have been admissible in evidence at all as proof of the fact, in a prosecution of this kind, since it would be a record which the law does not require to be kept. It is the *fact* of notice of the election which the statute requires, and it was proved without dispute that the notice had been published in compliance with the order of the county court, which it is perceived followed the terms of the statute.

IV. The same disposition may be made of the objection that the county court did not spread upon its

The State v. Hutton.

records the fact that the result of the election had been published, as provided by section five of the statute. The statute nowhere provides that the county court shall have the fact of publication proved to it in any manner and spread such proof of publication upon its records; nor is it required to find, as a judicial tribunal, that the publication has taken place for which the statute provides. In this case it was proved by the record of the county court that it ordered publication of the result of the election to be made, in compliance with the terms of the statute, and this was all that the statute requires. It might have been better if the statute had been so framed as to require a memorial of the fact of the publication in each case to be spread upon the records of the county court; but, as the statute has not so provided, it is not our duty to overthrow the election for the purpose of improving the statute.

V. It is unnecessary to dwell upon the objection that the statute, under which this prosecution took place, did not supersede the special charter granted by the legislature to the town of Commerce in 1874, under which the defendant claims to have had a merchant's license to sell liquor. The local option law was intended to be of universal operation within whatever limit of territory it should be put in force by a vote of the people in compliance with its terms. Its language is irreconcilably opposed to the conclusion that any rights repugnant to it, existing under precedent town charters or other local statutes, can be allowed to stand. It, therefore, repeals by necessary implication every thing in the charter of the town of Commerce which may be opposed to its terms. *State ex rel. v. Francis*, 95 Mo. 44; *State ex rel. v. Dolan*, 93 Mo. 467, 473; *Ewing v. Hoblitzelle*, 85 Mo. 64. But this court held (*In re Wooldridge*, 30 Mo. App. 612, 619), that the local option law applies to all towns, whether operating under a special charter or not. In that case the question was

whether it had been lawfully put in force in the city of Springfield, which contained more than twenty-five hundred inhabitants: and here the question is whether it was put in force in the town of Commerce, which contains less than twenty-five hundred inhabitants. There is no distinction in principle between the two cases.

VI. We further observe upon this record, as we observed in the case of *State v. Searcy*, *ante*, p. 392, that it was unnecessary for the state to assume the burden of alleging and proving in detail the steps which led to the adoption and putting in force of the local option law within the limits of the county. We refer to the opinion just delivered in that case for a statement of our views as to what it is necessary for the state to allege and prove, and what is open in the way of defense to the accused.

The judgment will be affirmed. All the judges concur.