STATE ex rel. JAMES M. HOLLADAY, Relator, v.
RINKE, Mayor, etc., et al., Respondents.

### St. Louis Court of Appeals, July 6, 1909.

1. **LOCAL OPTION: Cities with 2,500 Population, or More: Statute.** Section 3027, R. S. 1899, provides that upon the filing of a petition, signed by one-tenth of the qualified voters of any county residing outside the corporate limits of any city or town having at the time of such petition "a population of 2,500 inhabitants, or more, who are qualified to vote for members of the legislature," the county court shall order an election to determine whether the Local Option Law shall obtain. The words "having a population of 2,500 inhabitants, or more, who are qualified to vote for members of the legislature" used in said section do not mean that the town or city must have 2,500 qualified voters in order to be excluded, but mean that it shall be excluded if it has that number of inhabitants, irrespective of whether they are voters.

2. ————: ————: **Finding by Court: Collateral Attack.** In a proceeding by mandamus, where a collateral attack is made upon a local option election, a recital in the order of the county court providing for the election, that there was then no incorporated city or town within the county having 2,500 inhabitants, or more, is conclusive upon the court issuing the writ.

3. ————: **Order of Court: Notice of Election.** Where the order made by the county court providing for a local option election recites that the court found there was then no incorporated city or town in the county which had 2,500 inhabitants, or more, and the notice of election published recites *inter alia* that the election is to be held to "determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of said county, *outside the limits of any city or town having* 2,500 *inhabitants, or more,*" the notice of election is illegal, as varying from the order, in excluding any town or city having a population of 2,500, or more; and an election held pursuant to such notice is void.

4. **STATUTES: Construction: Repeal.** A statute can be repealed only by an express provision of a subsequent law or by necessary implication; and where there are two statutes upon the same subject they should be so construed as that both may stand, if possible, the later statute merely repealing the former *pro tanto* as to inconsistent provisions.

State ex rel. v. Rinke.

5. **MUNICIPAL CORPORATONS: Cities of Fourth Class: Statutes: Census.** Section 5895a, Revised Statutes 1899, applies to the taking of a census to determine the tax rate in a city of the fourth class, but for any other purpose, the census must be taken under section 6300, Revised Statutes 1899.

6. **LOCAL OPTION: Void Election: No Bar to Another Election.** A void election to determine whether or not the Local Option Law shall be adopted is not a bar to holding another election within the legal period.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*J. H. Malugen* and *H. B. Ledbetter* for the relator.

(1) The county court being a court of limited jurisdiction, it must appear that all the elements necessary to give jurisdiction exist at the time the court acts. The power of the court to order a local option election throughout St. Francois county depended on two things: First, a petition signed by one-tenth of the qualified voters of St. Francois county, and, second, that there was not an incorporated city or town with twenty-five hundred inhabitants or more within said county. Ziebold v. Forster, 118 Mo. 349; Corrigan v. Morris, 43 Mo. App. 456; Maupin v. Franklin Co., 67 Mo. 327; Wise v. Loring, 54 Mo. App. 258; Cunningham v. Railroad, 61 Mo. 33; Fletcher v. Keyte, 66 Mo. 285; Ewing v. Donnelly, 20 Mo. App. 6; Zimmerman v. Snowden, 88 Mo. 218; Ex parte Bryan, 127 Mo. 477. (2) The record in this cause fails to show any census of the city of Farmington offered by the petitioners on February 3 or 4, 1908, showing that said city then had less than twenty-five hundred inhabitants. It further fails to show the existence of any census showing that Farmington had less than twenty-five hundred inhabitants on said dates. State v. Webb, 49 Mo. App. 407; R. S. 1899, sec. 6300. (3) Judicial notice is the act by which a court, in conducting a trial or framing a decision, will, of its own motion and without the production of evidence, recog-

nize the existence and truth of certain facts, having a bearing on the controversy at bar. Black's Law Dictionary, p. 658; Greenleaf on Evidence, vol. 1. (4) While courts do take judicial notice of the population of towns and cities, as shown by an authorized census, yet such census can properly be evidence only at or near the time of such census. (5) It is conceded that courts do not take judicial notice of ordinances of cities, yet when they have express knowledge of such ordinances, their knowledge may be considered as affecting their good faith. (6) From February 7, 1908, when the return of the census was made to and canvassed by the city clerk, all courts were bound to take judicial notice of such census; hence, the order made February 8, 1908, appointing judges of election, was made at a time when the county court had no authority to act in the manner complained of. State ex rel. v. Mitchell et al., 139 Mo. App. 38; R. S. 1899, sec. 6300. (7) Can the jurisdiction of a court be sustained, after its jurisdiction is ousted, and when to do so would permit it to perpetrate a fraud or a deception on the people? Otherwise stated, after the jurisdiction of the county court to hold an election over the entire county was ousted on and after February 7, 1908, shall the proceedings of such court be upheld and given binding force? (8) Relator insists that the question which respondents assert was adopted was never submitted to, nor voted on by, the people. A petition for the submission of the Local Option Law to embrace the whole of St. Francois county was presented to the county court, and upon this petition an election was ordered for the entire county; and the returns were made and the notice published of the adoption of said law by the entire county. There should be absolute certainty as to the question prayed to be submitted by the petition and the question actually submitted to the vote of the people. State ex rel. v. Weeks, 38 Mo. App. 566; Railroad v. Apperson,

97 Mo. 300; Cook v. Davis Co., 36 Ind. 320; Thatcher v. People, 93 Ill. 440; McPike v. Pen, 51 Mo. 63. (9) An examination of the whole record fully discloses that the proposition now sought to be held adopted was never petitioned for; no order of election was made therefor; no notice of the submission of such question was given; the people did not vote on the question; and there was no order declaring such question adopted nor any notice of such result given. State v. Webb, 49 Mo. App. 407; State v. Patton, 108 Mo. App. 26; Bean v. County Court, 33 Mo. App. 635. (10) The county court never acquired jurisdiction over the city of Farmington, because sections 3028 and 3029, Revised Statutes of 1899, being construed *in pari materia,* the county court was effectually charged with notice of the ordinance of the city of Farmington, ordering the census taken, and hence was bound by such census. (11) The county court lost all jurisdiction over the city of Farmington on February 7, 1908, when the census was completed and tabulated by the city clerk. State v. Lackey, 2 Ind. 285; Assessors v. Osborn, 76 U. S. 567; Remington v. Smith, 1 Col. 53; Hunt v. Jenkins (Ind.), 33 Am. Dec. 465; Langdon v. Applegate, 5 Ind. 327; Lannera v. Haggerty, 62 N. Y. S. 1084; State ex rel. v. Mitchell et al. (not reported). (12) The jurisdiction of the county court over the city of Farmington depended on its jurisdiction to decide this antecedent question before making an order affecting such city; and section 3028 having provided a method, such county court, being a court of inferior jurisdiction, had no power to find the fact; and its act in doing so is a collateral matter, which may be inquired into at any time. And if it be found that such court so acting, did not act in good faith, or in disregard of the city, will be sufficient ground to nullify such action. The question as to whether the city of Farmington had 2,500 or more inhabitants on February 3 and 4, 1908, is a fact, and

if it had 2,500 or more inhabitants on that date then the county court was without any jurisdiction to order a local option election to affect said city. This question must be determined by the petitioners at their peril. If Farmington had 2,500 inhabitants or more, then the petition failed to give jurisdiction to the court and the order of election was a nullity. (13) Courts do lose their jurisdiction even when rightfully acquired. In an action before a justice of the peace when there is an affidavit made showing that the title to real estate is involved. R. S. 1899, sec. 3951; State ex rel. v. Mitchell (not reported).

*R. C. Tucker* and *G. O. Nations* for respondents.

(1) The law vests in the county court exclusive jurisdiction to order a local option election in the county and to determine all jurisdictional facts in relation thereto. R. S. 1899, sec. 3027. (2) The county court found and determined judicially that the petition for the local option election was in every way sufficient and that the county contained, "at the time of such petition," no incorporated city of twenty-five hundred or more inhabitants. Both of these findings are conclusive and neither can be attacked in a collateral proceeding. State v. Mackin, 51 Mo. App. 299; State v. Searcy, 39 Mo. App. 393; State ex rel. v. Young, 84 Mo. 90; State v. Evans, 83 Mo. 319; State ex rel. v. Weatherby, 45 Mo. 17. (3) The county court, at the time of making the order for the election, had no knowledge that the city was preparing to have a census taken, and the court was not charged with judicial notice of the city ordinance passed for that purpose. Courts do not take judicial notice of city ordinances. Such ordinances must be proved as any other facts; and no such proof was placed before the court. Cox v. St. Louis, 11 Mo. 431; Mooney v. Kennett, 19 Mo. 551; State ex rel. v. Sherman, 42 Mo. 210; St. Louis v. Railroad, 12 Mo. App. 591; St. Louis v. Roche,

128 Mo. 541; Trenton v. Collier, 68 Mo. App. 483; Tarkio v. Lloyd, 179 Mo. 600; State v. Gustin, 152 Mo. 108; St. Louis v. Liessing, 190 Mo. 464; Spiro v. Transit Co., 109 Mo. App. 1; Canton v. Madden, 120 Mo. App. 404. (4) The law required the county court to order the election "to take place within forty days after the reception of such petition." It also required that notice thereof be published for twenty-eight days. Had the court awaited the return of the city census, even if the court had known that a census was contemplated, it would have been impossible to give the requisite notice and then hold the election within forty days. An election held after forty days would have been void. R. S. 1899, sec. 3027, 3029; State v. Webb, 49 Mo. App. 407; State ex rel. v. Ruark, 34 Mo. App. 325; State ex rel. v. Gasconade Co. Court, 33 Mo. 102; Ex parte Sublet. (Tex.), 4 S. W. 894. (5) The jurisdiction of the county court at the beginning of the local option proceedings and prior to the return of the city census is unquestioned; and this court has expressly held that the county court had jurisdiction at that time. R. S. 1899, sec. 3027; State ex rel. v. Mitchell et al., 139 Mo. App. 38. (6) Having acquired jurisdiction at the beginning of the proceedings, the county court was not divested of that jurisdiction by any subsequent event. State ex rel. v. County Court, 38 Mo. 407; Mollan v. Tarrance, 9 Wheat. 537; Clark v. Mathewson, 12 Peters 164. Arising out of these early adjudications, a strong current of authority flows without interruption to our own day. Barnes v. Railroad, 119 Mo. App. 309; Dunn v. Clark, 8 Peters 1; Marshall v. Knox, 16 Wall. 551; Peck v. Jenness, 7 Howard 624; Koppell v. Heinrichs, 1 Barbour (N. Y.) 449; Ellis v. Jones, 51 Mo. 186; Hardin v. Lee, 51 Mo. 241; Seibel v. Simeon, 62 Mo. 255; Marx v. Hart, 166 Mo. 520; Hunt v. Searcy, 167 Mo. 171; Biddle's Appeal, 68 Pa. 13; Keller v. Denmead, 68 Pa. 454; Bank v. Smith, 122 Mo. App. 63; 12 Ency. of Pl.

State ex rel. v. Rinke.

and Pr., p. 171. (7) The statute expressly directs that the county court, in ordering the local option election, shall exclude only such cities as have twenty-five hundred or more inhabitants "at the time of the petition." R. S. 1899, sec. 3027. To show conclusively that the Legislature did not intend for the county court's jurisdiction to be ousted or disturbed by any census taken during the proceedings, it is again expressly provided by statute that if the Local Option Law is adopted at the election, such cities only as had twenty-five hundred inhabitants "at the date of the order of election" shall be exempt from its operation. R. S. 1899, sec. 3032. These provisions show an unmistakable intention on the part of the Legislature to let the status of a city at the beginning of the local option proceedings determine whether or not such city shall participate in the election and be bound by the result thereof. (8) The notice of the local option election as published in the Lead Belt News by order of the county court was sufficient under the statute and was so held by this court in the recent case of State ex rel. v. Mitchell, R. S. 1899, sec. 3029; State v. Dugan, 110 Mo. 138; State v. Hitchcock, 124 Mo. App. 74. (9) The appointment of judges of the election pursuant to the order of court made February 4, the canvassing of the returns by the county clerk assisted by two judges of the county court, the spreading of the result of the election on the records of the county court, and the publishing of the result in the Lead Belt News were all ministerial acts required by law. R. S. 1899, secs. 3027, 3031, 6996; State v. Searcy, 39 Mo. App. 393; State v. Hutton, 39 Mo. App. 410. (10) The last census of Farmington that was in existence on February 4, 1908, when the county court ordered the local option election, showed that the population of the city was 2157. As a matter of law, the county court and this court must accept that as the population of the city until a later census was taken.

The statute directs that "after said census is returned . . . all courts of this State shall take judicial notice of the population of such city or town." The population of which all courts must take notice is evidently that shown by the census. The county court, then, when ordering the election, was bound to find that the population was 2,157. R. S. 1899, sec. 6300. (11) Finally the county court acted in good faith throughout the proceedings and complied with every requirement of the statutes; and all orders made by the county court were required by the statutes; and therefore respondents contend that the Local Option Law was legally adopted in St. Francois county and is now the law of the State within the said county as shown by the records of the county court and set out in the Wilkson case, supra, and as shown by article three, chapter 22, Revised Statutes of Missouri, 1899.

REYNOLDS, P. J.—This case was entitled, when filed, State ex rel. James W. Halladay v. A. H. Mitchell et al. As the questions involved in it necessitate reference to the case of State ex rel. Retornez v. Mitchell et al., not officially reported, but in 115 S. W. 1098, we use in the title of this the name of another of the defendants to avoid confusion between the two cases.

It is a proceeding by mandamus to compel defendant Rinke, alleged to be mayor, and the other defendants alleged to be councilmen of the putative city of Flat River, to issue to relator a license as dramshop keeper in Flat River. An alternative writ was issued by us June 4, 1909.

The facts in the case as disclosed by the record now before us are these: On the 3rd of February, 1908, a petition was filed with the county court of St. Francois county, praying the court to order an election in the county to determine whether or not spirituous and intoxicating liquors, including wine and beer, should be sold within the limits of the county.

The petitioners set out by way of recital in their petition, "that there is no city or incorporated town in said county at this time having a population of 2,500 inhabitants or more," and that the petitioners con· stitute one-tenth of the qualified voters of the county. On the 4th of February, the county court entered up an order in which it is recited that the court acting, "on an application by petition, duly signed by 867 persons, who reside in St. Francois county, Missouri, praying the court to make an order entered of record ordering and authorizing and directing that a special election be held in St. Francois county, Mo., and submitting to the qualified voters thereof what is known as the Local Option Law . . . and to decide at such special election the fact whether or not said St. Francois county shall adopt the law known as the Local Option Law and thereby decide if spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of St. Francois county, Missouri, lying outside of the corporate limits of any city or town having 2,500 inhabitants or more for the next four years after said special election," and it was recited that the application by petition having been taken up and all and singular the matters and issues being submitted, the court finds that the petition is signed by 867 persons, *bona fide* citizens and qualified voters of St. Francois county, entitled and qualified to vote for members of the Legislature in that county, and that the number of signers constitute more than one-tenth of the qualified voters of the county as shown by the poll books of the previous general election, it appearing by the poll books that 5,792 votes had been cast in the county by persons entitled to vote for members of the Legislature. "The court further finds that there is no incorporated city or town in said county having at the time the petition was filed a population of 2,500 inhabitants or more," and that no election under the Local Option Law had been held within the preceding

four years and that more than ten years have elapsed since the question of local option had been submitted and that the period of forty days from the day of filing of the petition will expire more than sixty days before any general election is to be held under the laws of the State or any special election held by virtue of any order of the court, which matters being considered, "said special election is granted on said petition and it is ordered and adjudged that a special election be held in St. Francois county, Missouri, on Saturday, the 7th day of March, 1908, at the usual voting precincts in said county, . . . and vote on the proposition and the question submitted and to determine whether or not spirituous and intoxicating liquors, including wine and beer shall be sold within the limits of said county." It was also ordered that the clerk give notice by publication for four consecutive weeks; that he furnish ballots for use at the election, and the order further provided for the appointment of judges for the several election precincts throughout the county to act at that election. On February 8th the county court proceeded to the appointment of the judges of the election to serve at this special election and the clerk was ordered to issue certificates of appointment and the sheriff ordered to deliver them to the parties appointed. Judges were appointed for the two election precincts into which the city of Farmington is divided as well as for all the other precincts in the county. Publication of notice of the election was also made, as appears by evidence, for four weeks, the first publication being made February 6th, the last on March 6th. The notice published set out the order of the court as above including the statement that the court found that there was no incorporated town or city within the limits of the county, having a population of 2,500 or more, and that the election was on the proposition whether or not St. Francois county should adopt the Local Option Law, "and thereby decide if spirituous

and intoxicating liquors . . . shall be sold within the limits of St. Francois county, Missouri, for the period of four years." The published notice concludes: "Now, therefore, in accordance with the above finding, it is ordered by the clerk of the county court of St. Francois county, Missouri, *that the qualified voters of St. Francois county,* Missouri, be notified and they are hereby notified that a special election will be held *at the usual voting precincts in said county,* on Saturday, March 7, 1908, to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of said county, *outside the limits of any city or town having* 2,500 *inhabitants or more."* The italics are ours.

On March 10th, the matter of the election coming before the county court, this entry appears on the records of the court: "The matter of the special election coming on to be heard and determined by the court, the court finds that heretofore on the 4th day of February, 1908, an order was made of record upon the presentation of a petition signed by more than one-tenth of the qualified voters of St. Francois county, Missouri, *who reside outside the limits of any city or town having at the time of such petition and order a population of* 2,500 *or more inhabitants* and who are qualified to vote for members of the Legislature, directing that a special election be held in said St. Francois county . . . March 7, 1908, to determine whether or not intoxicating liquors . . . shall be sold within the limits of said county *lying outside such limits of such town or city having* 2,500 *or more inhabitants,* as aforesaid." Italics ours. The court finds that the notice of the election was duly published, election held and conducted in accordance with the law; that the vote cast at the election had been duly canvassed and that the result of the special election was that there were cast against the sale of intoxicating liquors 3,240 votes and for the sale of intoxicating liquors 2,763 votes,

and that the majority of votes at the election was 477 against the sale of intoxicating liquors and the total number of votes cast at the special election was 6,003, and the clerk of the court was ordered to publish the result of the election.  It appears by this return that the election was held in every voting precinct in the county, including those within the city of Farmington. There were 467 votes cast against and 351 cast in favor of the adoption of the Local Option Law in the voting precincts of Farmington, being a majority in that city against adoption of 116, and if that 116 is taken off of the 477 majority for its adoption, it appears that the proposition was carried outside of Farmington by a majority of 361 votes.  The proposition, it thus appears, was carried in the county outside of Farmington by a decided majority.  It further appears by the record before us that among the petitioners petitioning for the submission of the proposition, a large number were citizens of Farmington.  That number has not been counted up for us by counsel, but roughly stated, there appear to be about 194 out of the 867 persons petitioning who, if the vote was to exclude Farmington, were not entitled to be counted in as part of the ten per cent of the qualified petitioning voters of the county.  Taking this 194 from the 867, who had petitioned for submission of the question gives 673 as outside of Farmington petitioning, and as the total vote in the preceding election in the county was 5,792, and the total vote cast at this special election in Farmington was 818, deducting that from the 5792 leaves 4974 voters outside of Farmington, and the 673 petitioners outside of that town are considerably over the ten per cent required.  There can be no question whatever in the case but that the number of petitioners requisite to institute the election had signed petitions for the election, excluding the voters of Farmington entirely from the calculation, so that if this had been a proposition submitted in lawful manner to the voters of the county,

outside of Farmington, the requisite number of voters had petitioned for it and it had been carried by a majority vote by the people outside of the city. We mention these matters now and call attention to these figures, not claiming them to be accurate but substantially so, in order that it may not be said that we have overlooked this phase of the case in arriving at the conclusion which we shall hereafter state.

Resuming the history of the transaction, it appears by the record in the case that on the 3rd day of February, 1908, the board of aldermen of the city of Farmington passed an ordinance requiring the taking of a census of the inhabitants of the city, providing for the appointment of enumerators and requiring them to complete and make return of the census within four days, proceeding under the provisions of section 6300, Revised Statutes 1899, and it appears that on the 7th of February, the enumerators completed their work and made a return of the enumeration on the 7th of February, 1908, to the city clerk of Farmington, who duly filed it and reported it to the board, by whom it was that day approved. By this enumeration and return, it appeared that the city of Farmington at that date had a population of 2771 people. A duly certified copy of the return of the enumerators and of the enumeration made was filed with the clerk of the county court of the county on the 10th of February. Farmington is the county seat of St. Francois county and the county court held its sessions in that city.

REYNOLDS, P. J. (after stating the facts).— At the outset of the case we are met by the suggestion from a member of this bar, acting as *amicus curiae,* that the proceeding is not in good faith; that relator is a well known advocate of local option; that if he is granted a license he would not use it; that the lease of the building occupied by him on lot 48, block

1, in Flat River, in terms forbids the use of the building or premises for "a dramshop, beer garden or house for the exposure or sale of any kind of liquors or drinks, or for any store or any like purpose," and that by decree of the circuit court of St. Francois county, of date June 16, 1909, now however under appeal, it was adjudged that the order of the county court purporting to incorporate the city of Flat River, was held to be null, void and of no effect, and the territory embraced within the limits of said putative city held to be unlawfully incorporated.

In view of the importance to the people of St. Francois county of a definite settlement of the question sought to be submitted by this case and attempted to be raised in other cases coming from that county, which we have been compelled to dismiss for various technical defects, and that we may, if possible, put an end to a somewhat acrimonious and vexatious dispute, we have concluded that the ends of justice and the settlement of the minds of the people of St. Francois county on this subject are of more importance than the mere form in which the matter is presented to us.

The question involved in this, as in all these various cases is, whether the Local Option Law was legally adopted by St. Francois county, by virtue of an election held in that county on March 7, 1908. This court held, in the case of State ex rel. Retornez v. Mitchell, supra, the decision being filed December 1, 1908, that the Local Option Law was not in force and effect in the city of Farmington. It was stated in that decision that while the election was invalid so far as the city of Farmington was concerned, there was some doubt in the mind of the court as to whether it was valid and the Local Option Law in force in the rest of the county. It is under the doubt arising from this suggestion that much contention has arisen. The question presented to the court in the Retornez Case was solely as to whether the Local Option Law was opera-

tive in the city of Farmington. While it was argued
that it was operative in the county outside of that city,
the record was not in such shape that this court could
pass on that. It seems that the circuit court and the
county court have been proceeding on the theory that
it was not in force in the county, the one so holding
in criminal prosecutions and the other in the issue
of dramshop licenses. In the case at bar it is claimed
by the respondents that it is in force throughout the
county, the city of Farmington excepted.

Section 3027, Revised Statutes 1899, provides that
"upon application by petition, signed by one-tenth
of the qualified voters of any county who shall reside
outside of the corporate limits of any city or town hav-
ing, at the time of such petition, a population of 2,500
inhabitants or more, who are qualified to vote for mem-
bers of the Legislature, in any county in this State,
the county court of such county shall order an elec-
tion to be held in such county at the usual voting pre-
cincts for holding any general election for State officers,
. . . to determine whether or not spirituous and
intoxicating liquors . . . shall be sold within the
limits of such county lying outside of such corporate
limits of such city or town."

While section 3027 reads, "having a population
of 2,500 inhabitants or more who are qualified to vote
for members of the Legislature," it has never been un-
derstood that this meant that the incorporated city
or town was to have 2,500 qualified voters within its
limits; so far as we know the test being applied to in-
habitants in the sense of population and not in the sense
of qualified voters. We would be doing violence to the
general opinion of the State to construe the 2,500 here
referred to as meaning 2,500 voters, and we decline to
do so. Section 3028 makes it clear that the number
of inhabitants is meant. In the present instance the
county court recites as a fact that there was at the
time no incorporated city or town within the limits of

the county at the time having a population of 2,500 inhabitants or more. In this collateral attack by mandamus, the existence of this jurisdictional fact is not open to inquiry. When the county court found, as recited in its order, that there was no incorporated city or town within its limits with that population at the time it entered up its order in this case, that finding is conclusive on us in this case. [State v. Searcy, 39 Mo. App. 393; State v. Dugan, 110 Mo. 138; State v. McCord, 207 Mo. 519.] But the regularity of the proceeding is open to inquiry. Whether the essential steps required by the statute have been taken can be inquired into. While the county courts have no jurisdiction to order an election under the Local Option Law to be held by the voters of the whole county, when that county includes within its boundaries an incorporated city or town having at the time of such petitioning a population of 2,500 inhabitants or more, the determination of the fact of whether there is such town or city is primarily within the jurisdiction of the county court, and its determination thereof not open to collateral attack. The court having so found, it was the duty of the clerk to give notice accordingly of an election by all the voters of the county, to vote on the proposition of putting the law in operation throughout the county. The notice and order of election published and under which the voters were formally notified of what they were to vote on did not do this.

The notice of the election as published by the clerk of the county court recites, "that the qualified voters of St. Francois county, Missouri, be notified and they are hereby notified that a special election will be held at the usual voting precincts in the county, on Saturday, March 7, 1908, to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of said county, *outside of the limits of any city or town having* 2,500 *inhabitants* or more." This was a departure from the

order of the court, was not the election ordered, and was an illegal notice. No such limitation, excluding any town or city, was contained in the order. This was a marked and substantial and fatal variance from the order and is not supported by the order. If there was such a town or city, then the electors.of that town or city had no right to participate in the election, nor had the electors outside of any such town or city any right to vote the Local Option Law into operation in such town or city. The attempt of the clerk to exclude any incorporated town or city, with 2,500 inhabitants was without legal effect. Furthermore, when the county court entered up its order declaring the result of the election, which it did on March 10th, it seems to have overlooked the fact that it had determined that there was no such town in the county, for it repeated these words, excluding any such town or city which might be in the county, as having been in the order of February 4th, when in fact they were not present in that order.

The points against the validity of the notice of the election and against the form in which the county court declared the result, were not presented in the Retornaz Case in the phase they are here and neither was our attention called to section 5895a, Sess. Acts 1905, p. 80 (3 Mo. Ann. St., p. 2990), concerning the mode of taking a census in a city of the fourth class. If the census taken by the city of Farmington was not binding on the county court because the method prescribed in that section was not followed in taking it, and if the opinion in the Retornaz Case erred in losing sight of that section, or for any other reason (which we do not decide); the right result was nevertheless reached because of the invalid notice of election.

A consideration of section 5895a in connection with section 6300 leads us to the conclusion that in the matter of taking a census to ascertain the population of a city of the fourth class, section 6300 governs in all

cases except where a census is to be taken for the purpose of fixing the 'amount of a tax levy for city purposes. We are led to this conclusion by following the well-settled rules governing the interpretation of statutes, that a statute is held to be repealed only by an express provision of a subsequent law or by necessary implication; that a later statute will not repeal a former one by implication when the two laws are not irreconcilably inconsistent and can stand together; that if by fair interpretation all the sections of a statute can stand together, there is no repeal by implication, and that where there are two statutes upon the same subject, they should be so construed as that both may stand if possible, the later repealing the earlier, *pro tanto* as to inconsistent provisions. It is a further rule of construction that if two statutes can be read together without contradiction or repugnancy or absurdity or unreasonableness, they should be read together, and both will have effect. [Railroad v. Cass County et al., 53 Mo. 17; State ex rel. v. Dolan, '93 Mo. 467; State ex rel. v. Walbridge, 119 Mo. 383; Kansas City v. Smart, 128 Mo. 272; State ex rel. v. Stratton, 136 Mo. 423.] The act of 1905 interpolating section 5895a into article 5, chapter 91, Revised Statutes 1899, in our opinion, was intended to apply to the taking of a census solely to determine the tax levy rate. Section 6300, on the contrary, is general in its object, being taken to ascertain population "for any other purpose that the law may require or have any other act or thing to be done making the population the basis thereof," and it expressly enacts that "this section shall apply to cities of the fourth class, and towns and villages, and cities and towns under special charters." When a census is to be taken in a city of the fourth class, for any purpose other than ascertainment of population for taxation, it must be taken under section 6300, Revised Statutes 1899.

Our conclusion on the whole matter is, that the

local option election of March 7, 1908, was not a lawful election. It was held on a petition praying for submission to vote of all the voters of the county; its ostensible object was to put the law in force over all the county, and the order recited there was no city or incorporated town of 2,500 inhabitants in the county. The notice of election distinctly negatived or left open as uncertain, to be determined, in effect by the votes, whether there was any such town or city in the county. In this respect the notice of election did not follow the order. For this reason we hold the election of March 7, 1908, void. We do this with less hesitation, because the opportunity is still open to the people of that county to test the sense of the voters on the matter at an unquestionably legal election. It is better for all concerned that this be done, than to attempt to hold on to an election, the legality of which would always be open to question in the minds of many whichever way we decided it. No matter how great the majority may be, if cast at an unlawful election, it avails nothing. It is very evident from the record in this case, that the people of St. Francois county were in favor of local option, and the consequent prohibition of the sale of liquor. It is within the power of the majority of the voters of St. Francois county to put into force local option by entirely lawful means and measures. The election held in March, 1908, being void, as we hold, there has been no election on that matter within the legal period, so that, if it is still the will of the people of that county, outside of the city of Farmington, or any other incorporated town or city with the prescribed population, to put the question to the test, the way is open to them. The relator is entitled to this city license. What effect that will have on his lease is for his own determination. Whether he shall then go forward and apply for and obtain a county license, is for him—he being presumed to know that a city license alone, without one from the county

court, will be no protection to him in case of prosecution for selling without a dramshop license. The alternative writ heretofore issued is made absolute. Writ of mandamus awarded.   All concur.